**CLARKSON LAW FIRM, P.C.**
Ryan J. Clarkson (SBN 257074)
rclarkson@clarksonlawfirm.com
Zachary Chrzan (SBN 329159)
zchrzan@clarksonlawfirm.com
22525 Pacific Coast Highway
Malibu, CA 90265
Tel: (213) 788-4050
Fax: (213) 788-4070

*Attorneys for Plaintiff Phillip White*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP WHITE, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>T.W. GARNER FOOD CO., a North Carolina corporation,<br><br>Defendant. | Case No. 2:22-cv-06503<br><br>**CLASS ACTION COMPLAINT**<br><br>1. VIOLATION OF UNFAIR COMPETITION LAW (CAL BUS. & PROF. CODE § 17200, *et seq.*)<br>2. VIOLATION OF FALSE ADVERTISING LAW (CAL. BUS. & PROF. CODE §§ 17500, *et seq.*)<br>3. VIOLATION OF CONSUMERS LEGAL REMEDIES ACT (CAL. CIV. CODE §§ 1750, *et seq.*)<br>4. BREACH OF WARRANTY<br>5. UNJUST ENRICHMENT<br><br>**DEMAND FOR JURY TRIAL** |

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# **TABLE OF CONTENTS**

**Page No.**

COMPLAINT ................................................................................................................1

I.    INTRODUCTION .................................................................................................1

II.   JURISDICTION ....................................................................................................4

III.  VENUE ..................................................................................................................4

IV.  PARTIES ...............................................................................................................5

V.   FACTUAL ALLEGATIONS ................................................................................6

     A.     The Geographic Origin of a Product Is Important to Consumers ............6

     B.     Consumer Demand for Authentic Texas Products and Hot Sauce ..........8

     C.     The Products Are not Made in "Texas" or With Texas Ingredients .......12

     D.     Defendant Knows Its Labeling and Advertising Are Misleading to the Reasonable Consumer ........................................................................13

     E.     Defendant's Conduct Unfairly Harms Competition ..............................18

     F.     The Products are Substantially Similar ..................................................21

     G.     No Adequate Remedy at Law. ...............................................................21

VI.  CLASS ACTION ALLEGATIONS .....................................................................25

     COUNT ONE ......................................................................................................29

     A.     "Unfair" Prong .......................................................................................32

     B.     "Fraudulent" Prong ................................................................................34

     C.     "Unlawful" Prong...................................................................................35

     COUNT TWO ......................................................................................................37

     COUNT THREE ..................................................................................................39

     COUNT FOUR ....................................................................................................42

     COUNT FIVE .....................................................................................................44

VII.  PRAYER FOR RELIEF ......................................................................................46

VIII. JURY TRIAL DEMANDED ...............................................................................47

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

# COMPLAINT

1.    Plaintiff Philip White ("**Plaintiff**"), individually and on behalf of all others similarly situated, as more fully described herein (the "**Class**" and "**Class Members**") brings this class action complaint again Defendant T.W. Garner Food Co. ("**Defendant**"), and alleges the following based upon investigation, information, and belief, unless otherwise expressly stated as based on personal knowledge.

## I.    INTRODUCTION

2.    **Synopsis.** This class action lawsuit arises from Defendant's failure to act in accordance with a fundamental precept of truth in advertising and fair play in the marketplace: the geographic origin of a product matters to consumers, and a company is therefore prohibited from misrepresenting it.

3.    By representing that its Texas Pete® brand hot sauce products ("Products") are Texas products, when they are not, Defendant has cheated its way to a market-leading position in the $3 billion-dollar hot-sauce industry at the expense of law-abiding competitors and consumers nationwide who desire authentic Texas hot sauce and reasonably, but incorrectly, believe that is what they are getting when they purchase Texas Pete.

4.    Although Defendant brands the Products "Texas Pete," there is surprisingly **nothing** Texas about them: unknown to consumers, the Products are standard Louisiana-style hot sauces, made with ingredients sourced outside the state of Texas, at a factory in North Carolina.

5.    In furtherance of its deceptive labeling scheme, Defendant adorns the packaging and labeling with distinctly Texan imagery: the famed white 'lone' star from the Texan flag together with a 'lassoing' cowboy.

6.    Defendant designed the misleading name and imagery to comprise the entire front label, repeated the deception on the prominent product seal, and then etched the Texan imagery into the glass on the front of the bottle.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

7.     A true and correct image of Defendant's Texas Pete Original Hot Sauce Product is depicted below. (**Exhibit 1-1**).



8.     Defendant concocted this false marketing and labeling scheme specifically because it knows the state of Texas enjoys a certain mysticism and appeal in the consumer marketplace and is known for its quality cuisine, spicy food, and hot sauce in particular.

9.     By way of its false marketing and labeling, Defendant knowingly and intentionally capitalizes on consumers' desire to partake in the culture and authentic cuisine of one of the most prideful states in America.

10.     As result of Defendant's false labeling scheme, consumers seeking an authentic Texas hot sauce, including Plaintiff, are misled into believing that is what they are getting when they purchase the Products.

11.     Consumers' belief that Texas Pete is a Texas product is reasonable. As one article aptly declares: "With a name like Texas Pete, one would think the famed hot sauce is manufactured in the Lone Star state."[1]

12.     Because there is nothing "Texas" about Texas Pete, Defendant's deceptive marketing and labeling scheme violates well-established federal and state consumer protection laws aimed at preventing this exact type of fraudulent scheme.

13.     Absent class relief, Defendant's fraud will go unchecked to the detriment of consumers who are harmed financially and otherwise deprived of the 'benefit of the bargain' when they purchase an inauthentic product they otherwise would not, and at a premium price.

14.     Defendant's illegal conduct will also continue to harm other law-abiding brands, including smaller companies in Texas who similarly seek to leverage consumer demand for authentic Texas hot sauce, but who play by the rules. This stifles competition, reduces consumer choice, and leads to consumers paying higher prices at the cash register for inferior goods.

15.     **The Products.** The Products at issue consist of all "Texas Pete" hot sauce products sold by Defendant, including, but not limited to (*See*, **Exhibit 1**):

        A. Texas Pete Original Hot Sauce;

        B. Texas Pete Hotter Hot Sauce; and

        C. Texas Pete Roasted Garlic Hot Sauce.

16.     **Primary Dual Objectives.** Plaintiff brings this action individually and on behalf of those similarly situated to represent a National Class and a California

---

[1] Catherine Carlock, "How Texas Pete got its Name: The Legend of Texas Pete (sort of)," TRIAD BUSINESS JOURNAL, https://www.bizjournals.com/triad/print-edition/2014/05/02/how-texas-pete-got-its-name-the-legend-of-texas.html (last visited Sep. 7, 2022).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Subclass of consumers who purchased the Products for dual primary objectives. Plaintiff seeks, on Plaintiff's individual behalf and on behalf of the Class, a monetary recovery of the price premium consumers overpaid for the Products due to the false and deceptive labeling, consistent with permissible law (including, for example, damages, restitution, disgorgement, and any applicable penalties/punitive damages, solely to the extent that those causes of action permit). More importantly, Plaintiff seeks injunctive relief in the form of an order requiring Defendant to change its unlawful advertising and labeling practices for the benefit of consumers, including Plaintiff and the Class.

## II.   JURISDICTION

17.   The Court has subject matter jurisdiction of this action pursuant to 28 U.S.C. §1332 of the Class Action Fairness Act of 2005 because there: (i) are 100 or more class members, (ii) is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) is minimal diversity because at least one Plaintiff and Defendant are citizens of different states. This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. §1367.

18.   Defendant is subject to personal jurisdiction in California based upon sufficient minimum contacts which exist between Defendant and California. Defendant is authorized to do and is doing business in California.

## III.   VENUE

19.   Pursuant to 28 U.S.C. §1391, this Court is the proper venue for this action because a substantial part of the events, omissions, and acts giving rise to the claims herein occurred in Los Angeles County. Plaintiff is a citizen of California who resides in Los Angeles County; Defendant made the challenged false representations to Plaintiff in Los Angeles County; Plaintiff purchased the Product in Los Angeles County; and Plaintiff consumed the Products within Los Angeles County. Moreover, Defendant receives substantial compensation from sales in Los

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Angeles County, and Defendant made numerous misrepresentations in its labeling and advertising that had a substantial effect in Los Angeles County.

## IV.   PARTIES

20.   **Plaintiff.** Plaintiff Phillip White is, and at all relevant times hereto was, an individual residing in Los Angeles, California. White purchased one bottle of the Texas Pete Original Hot Sauce Product in California within the last four (4) years of the filing of this Complaint. Specifically, White purchased the Product in or around September 2021 at a Ralph's store in Los Angeles, CA for approximately $3.00. In making his purchase decision, White relied upon the language and images displayed on the front label of the Product, and at the time of purchase understood the Product to be a Texas product. These labels were prepared and approved by Defendant and its agents and disseminated statewide and nationwide, as well as designed to encourage consumers like Plaintiff to purchase the Product. Had White known the Product was not made in Texas, he would not have purchased the Product, or would have paid significantly less for it. White spent money to purchase a product that was different than that which he expected, and White did not receive the benefit of his bargain. White may want to purchase the Product again in the future if he could be sure that the Product were compliant with California and federal consumer protection and advertising laws.

21.   **Defendant.** TW Garner Food Co. is a corporation headquartered in Winston-Salem, North Carolina. Defendant maintains its principal place of business at 614 W 4th Street, Winston-Salem, North Carolina. Defendant offers the Products for sale at stores and retailers, as well as on the internet, throughout the nation, including the State of California. Defendant, directly and through its agents, has substantial contacts with and receives substantial benefits and income from and through the State of California. Defendant is the owner and distributor of the Products and is the company that created and/or authorized the false, misleading, and deceptive advertisements and packaging for the Products.

22.    In committing the wrongful acts alleged herein, Defendant planned, participates in, and furthers a common scheme by means of false, misleading, deceptive, and fraudulent representations to induce members of the public to purchase the Products. Defendant participates in the making of such representations in that it disseminates or causes to be disseminated said misrepresentations.

23.    Defendant, upon becoming involved with the manufacture, distribution, advertising, marketing, and sale of the Products, knew or should have known that the claims about the Products and, in particular the claims suggesting that the Products are "Texas" products, are fraudulent. Defendant affirmatively misrepresents the nature and characteristics of the Products to convince the public to purchase and consume the Products, resulting in significant profits to Defendant, all to the damage and detriment of the consuming public.

## V.    FACTUAL ALLEGATIONS

### A.    The Geographic Origin of a Product Is Important to Consumers

24.    Manufacturers and marketers use origin claims to distinguish their products from other products, knowing consumers rely on the accuracy of those claims in making their purchasing decisions. In fact, consumers are willing to pay premium prices for Products that are authentically connected to a significant geographical area. Some well-known examples of premium origin products are authentic Mexican tortillas, Belgian Chocolate, and Napa, California wines.

25.    **Consumers Legal Remedies Act.**  Due to the import consumers put on origin advertising claims, the California state legislature has outlawed using "deceptive representations or designations of geographic origin in connection with goods or services." Cal. Civ. Code § 1770(a)(4).

26.    **FTC Guidelines.** The United States Federal Trade Commission ("**FTC**") similarly created standards regarding origin claims to help companies

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

avoid making misleading and deceptive claims.[2] If a product is advertised as "Made in USA," then "all or virtually all" of the product must be made in the United States.[3] Specifically, the FTC stated:

> In connection with promoting or offering for sale any good or service . . . it is an unfair or deceptive act or practice . . . to label any product as Made in the United States unless the final assembly or processing of the product occurs in the United States, all significant processing that goes into the product occurs in the United States, and all or virtually all ingredients or components of the product are made and sourced in the United States.

16 C.F.R. § 323.2.

27.     **Case Law.**  Courts around the country find cases involving false and deceptive origin advertising claims meritorious. *See*, *e.g.*, *De Dios Rodriguez v. Ole Mexican Foods*, 2021 U.S. Dist. LEXIS 85725 (C.D. Cal. Apr. 22, 2021) ([Hon. Jesus G. Bernal] denying defendant's motion to dismiss because the plaintiff plausibly alleged the statement "***A Taste of Mexico!***" and an image of a ***Mexican flag*** may reasonably convey the products are made in Mexico) (emphasis added); *Shalikar v. Asahi Beer U.S.A.*, 2017 U.S. Dist. LEXIS 221388 (C.D. Cal. Oct. 16 2017) ([Judge John A. Kronstadt] denying defendant's motion to dismiss because plaintiff plausibly alleged that the "Asahi" brand name (Japanese word meaning "morning sun") combined with various Japanese letters and phrases "could give rise to a reasonable inference or belief that the Product was produced in Japan," even though the product label does not directly state "Made in Japan."); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020) (denying defendant's motion to dismiss because the court could not conclude, as a matter of law, that no reasonable consumer would view the "Belgium 1926" label to mean the chocolate products were manufactured in Belgium); *Peacock v. Pabst Brewing Co., LLC*, 491

---

[2] *See* Federal Trade Commission, *Complying with the MADE IN USA STANDARD*, https://www.ftc.gov/system/files/documents/plain-language/bus03-complying-made-usa-standard.pdf. (last visited Sep. 7, 2022); *see also generally* 16 C.F.R. § 323.2—Made in USA Labeling; 62 FR 63756-01, 1997 WL 737641.

[3] *Id.*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

F. Supp. 3d 713 (E.D. Cal. Oct. 1, 2020) (holding defendant's "***Olympia Beer***" brand name, coupled with an image of a waterfall that looked "just like" a waterfall from Olympia, Washington, could deceive reasonable consumers, even though the packaging did not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding origin (emphasis added); "at this early stage, the Court must take Plaintiff's allegations as true and draw all reasonable inferences in his favor. Although Olympia's packaging does not contain a map pinpointing the alleged misrepresentation or an explicit statement regarding origin, Plaintiff alleges enough facts to draw a reasonable inference that a reasonable consumer would believe Olympia Beer is brewed with water from the Olympia area of Washington."); *Broomfield v. Craft Brew Alliance, Inc.*, 2017 U.S. Dist. LEXIS 142572 (N.D. Cal. Sept. 1, 2017) (finding inexplicit packaging and labeling statements and imagery that related to Hawaii, when taken in context, "amount to specific and measurable representations that could deceive consumers into believing that they were purchasing beer made in Kona, Hawaii," where such marketing claims included: a front label image of the Hawaiian island chain alongside the phrase "***Liquid Aloha***" and packaging ***imagery of hula dancers and nature*** associated with Hawaii (such as orchids, flowers, volcanoes, palm trees, surfers, canoes, waterfalls); "***Hawaii is a state as well as a state of mind***") (emphasis added).

28.    California law, FTC guidelines, and the overwhelming majority of case law show that accurate origin claims are important to consumers and that consumers are willing to pay a premium for products labeled as such.

**B.    Consumer Demand for Authentic Texas Products and Hot Sauce**

29.    **Hot Sauce Background.** Hot sauce is a $3 billion industry worldwide,[4]

---

[4] *Hot Sauce Market to Hit USD 4.72 Billion in 2029*, Fortune Business Insights, https://www.globenewswire.com/en/news-release/2022/05/19/2446546/0/en/Hot-Sauce-Market-to-Hit-USD-4-72-Billion-in-2029-Incising-Demand-for-Healthy-Appeasement-to-Spur-Product-Sale.html (last visited Sep. 12, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and a $1.5 billion industry in the United States alone.[5] The hot sauce industry is so large, in part, because of the wide variety of hot sauces there are for consumers to choose from.

30. Hot sauces often differ based on their particular style and geographic influence. In the United States, the most common (and familiar) style of hot sauce is the "Louisiana-style" hot sauce.[6] Louisiana-style hot sauce is defined by its combination of ingredients—vinegar, chiles, and salt—which are pureed and fermented.[7] Many of the most popular hot sauce brands are Louisiana-style hot sauces: Tabasco®, Frank's Red Hot®, and, notably, Texas Pete®.[8]

31. "Louisiana-style," however, is purely a reference to the combination of ingredients used to create a hot sauce; it does not indicate either (1) that the product was made in Louisiana, or (2) the ingredients used in the product came from Louisiana. For example, Mexican hot sauce brands, like Cholula® and Valentina®, are often classified as Louisiana-style hot sauces because of their combination of peppers, vinegar, and salt.[9] So, a Mexican hot sauce may be Louisiana-style hot sauce because of its general formula, but the flavor profile is uniquely Mexican because of the source of peppers used to make the product (Mexico is home to many

---

[5] *Hot Sauce Production in the* US, IBIS WORLD, https://www.ibisworld.com/industry-statistics/market-size/hot-sauce-production-unitedstates/#:~:text=The%20market%20size%2C%20measured%20by,decline%20%2D0.4%25%20in%202021 (last visited Sep. 7, 2022).

[6] Sammy Goldfien, *The Hot Sauce Field Guide*, https://www.foodandwine.com/lifestyle/hot-sauce-field-guide (last visited Sep. 7, 2022).

[7] *Id.*

[8] *Id.*

[9] *Id. See also* Aaron Hutcherson, *A Hot Sauce Guide with Tips for how to use 8 Common Styles*, https://www.washingtonpost.com/food/2021/06/18/hot-sauce-styles-guide/ (last visited Sep. 7, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

native peppers),[10] the ratio of the ingredients used, and the manufacturing location.[11] To illustrate, Valentina® hot sauce is a Louisiana-style hot sauce (its four primary ingredients are water, chili peppers, vinegar, and salt),[12] but Valentina® is correctly labeled as a "Mexican Hot Sauce" because the product is made in Mexico.[13]

32.  **Texas Hot Sauce and History.** A hot sauce is distinctly "Texas" if it is made in Texas, using Texas ingredients and flavor profiles. Texas hot sauce is not a "style" of hot sauce like Louisiana-style sauces. A hot sauce can be Louisiana-style without being made in Louisiana or containing Louisiana ingredients. Texas hot sauces, on the other hand, must be either made in Texas from ingredients sourced from Texas. A Texas hot sauce can be Louisiana-style, but it must have its own unique Texas influence and roots.[14]

33.  Texas foods and flavors, like many other things in Texas, are unique to their geographic location and culture. For example, Texas's hot, dry climate is ideal for pepper production.[15] For this reason, the pepper has become the backbone for a great deal of Texas cuisine. To illustrate, the chiltepin pepper, the only wild chili that is native to the United States, was designated the official native pepper of Texas in 1997.[16] Additionally, Texas declared the jalapeño its official state pepper in

---

[10] Refining Fire Chiles, https://www.superhotchiles.com/native-chiles/?v=7516fd43adaa, (last visited Sep. 7, 2022).

[11] Hutcherson, *supra* note 9 (Mexican hot sauces are slightly less acidic, and therefore have more flavor from the chiles and slightly less tang).

[12] Valentina website: https://www.salsavalentina.com (last visited Sep. 7, 2022).

[13] *Id.*

[14] *Hot Sauce*, TexasFood.com, https://www.texasfood.com/Hot-Sauce/ (last visited Aug. 23, 2022) ("Hot sauces made in Texas are typically Louisiana style, vinegar based."); *see also* Sammy Goldfien, *supra* note 6 (classifying the Products a "Louisiana-style" hot sauce).

[15] Joseph Masabni, *Peppers*, TEXAS A&M AGRILIFE EXTENSION, https://agrilifeextension.tamu.edu/library/gardening/peppers/ (last visited Sep. 7, 2022).

[16] *Chiltepin Pepper Guide: Heat, Flavor, Uses*, https://www.pepperscale.com/chiltepin-pepper/ (last visited Sep. 7, 2022);

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1995.[17] The only other U.S. state that has declared a pepper as a state symbol is New Mexico.

34.     Texas is also known for its unique "Tex-Mex" cuisine, a distinctly Texan fusion of Spanish and Native American elements.[18] Before Europeans arrived in the 1500's, the territory now known as Texas was inhabited by Native Americans.[19] When the Spanish settlors arrived, Texas became a part of a Spanish colony known as "New Spain."[20] When Texas officially won its independence and became a U.S. state in 1845, it brought with it generations of blended Native American and Spanish tradition.[21] This tradition led to many Tex-Mex classics like chili, nachos, enchiladas, and fajitas—foods that were originally considered Mexican dishes but eventually gave way to American influence.[22]

35.     Hot sauce is closely associated with Tex-Mex cuisine. Since Tex-Mex cuisine heavily relies on the use of chili peppers and spice, this cuisine lends itself well to sauces made with similar flavor compositions.[23]

36.     After crafting a flavor profile that is uniquely Texas over several hundred years, it is no surprise that Texas takes great pride in its hot sauce. Texas holds many festivals dedicated to its hot sauce and peppers (e.g., Texas Hot Sauce Festival, Hot Pepper Festival, Fredericksburg Hot Sauce Festival, and Zest Fest) to exchange recipes, advertise new products, and convene in honor of a shared interest

---

*Chiltepin, Texas State Native Pepper*, https://statesymbolsusa.org/symbol-official-item/texas/state-food-agriculture-symbol/chiltepin (last visited Sep. 7, 2022).

[17] *Jalapeño, Texas State Pepper*, https://statesymbolsusa.org/symbol-official-item/texas/state-food-agriculture-symbol/jalapeño (last visited Sep. 7, 2022).

[18] *Tracing the History of Tex-Mex*, https://www.history.com/news/tracing-the-history-of-tex-mex (last visited Sep. 7, 2022).

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.*

[23] *What is Tex-Mex Food—And What Makes This Style Iconic?* https://www.tasteofhome.com/article/what-is-tex-mex-food/ (last visited September 7, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

of the condiment.[24]

37.    Given that the flavors of Texas are so iconic, it is easy to see why there is consumer appeal for Texas-made products. Ultimately, Defendant trades on the reputation and fascination of Texas by giving consumers the impression that its Products are Texas-made, when the truth is, there is nothing "Texas" about them.

**C.    The Products Are not Made in "Texas" or With Texas Ingredients**

38.    Defendant's labeling and advertising campaign is overloaded with references to Texas. Through this false and deceptive labeling scheme, Defendant intentionally and strategically misleads consumers into believing that the Products are made in Texas.

39.    **False and Deceptive Brand Name.** Defendant's "Texas Pete" brand name, which is featured in large, prominent, italicized font, front-and-center on each of the Products' front labels, misleads reasonable consumers to believe that the Products are made in Texas from ingredients sourced from Texas.

40.    **Other False and Deceptive Label Attributes.** Right above the "Texas Pete" brand name/logo, Defendant prominently places a stereotypically white Texas "lone star," reminiscent of the Texas state flag. Texas is uniquely associated with this single white star; indeed, the flag is commonly referred to as the "Lone Star Flag" and it gave rise to the state's equally renowned, official nickname: "The Lone Star State."

41.    Defendant also prominently displays a notorious Texan cowboy throwing a lasso on the front label of the Products. This cowboy logo is also etched into the glass directly on the front of the bottle.

42.    The cowboy and lone star symbols are famously and inexorably linked

---

[24] *World Calendar of Hot Sauce Festivals,* CRAFT HOT SAUCE (June 24, 2021), https://info.crafthotsauce.com/world-calendar-of-hot-sauce-festivals/.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to the state of Texas,[25] especially when, viewed in context, they are featured alongside a brand name as geographically specific as "Texas Pete."

43.     **North Carolina Manufacturing.** Defendant manufactures the Products in Winston-Salem, North Carolina, and has since the inception of the brand.

44.     **Non-Texas Ingredients.** Defendant uses ingredients that are not sourced from Texas to manufacture the Products. In fact, on its website, Defendant readily admits having no connection to Texas, while it is decidedly not forthcoming about this on the Products or elsewhere at the point of purchase.

45.     In short, despite advertising and labeling the Products as "Texas" products, there is nothing Texas about the Products whatsoever.

46.     Defendant continues to profit from its deceptive labeling and advertising of the Products as hot sauces made in Texas at the expense of unsuspecting consumers who pay a premium for authenticity.

**D.     Defendant Knows Its Labeling and Advertising Are Misleading to the Reasonable Consumer**

47.     Consumers expect to receive truthfully labeled goods from a reliable, well-known brand like Texas Pete. Defendant has been manufacturing and selling the Products for nearly a century. Relying on this goodwill, Defendant intentionally

---

[25] *See, e.g.*, *Authentic Texas Cowboy Experience,* LET'S TEXAS, https://www.traveltexas.com/things-to-do/western-experience/where-to-go-for-an-authentic-texas-cowboy-experience/ (last visited Sep. 7, 2022) ("**cowboy culture in Texas has a long and proud history**."); *Cowboys Through History*, TEXAS HIGHWAYS, https://texashighways.com/travel-news/a-visual-history-of-cowboys-in-texas/ (last visited Sep. 7, 2022); **TEXAS COWBOY HALL OF FAME**, https://www.tchof.com/ (last visited September 7, 2022) ("Texas Cowboy Hall of Fame honors those individuals who have shown excellence in competition, business and support of rodeo and western lifestyle in Texas."); *Cowboy Capital of the World*, BANDERA COWBOY CAPITAL, https://www.banderacowboycapital.com/ (last visited Sep. 7, 2022); *Cowboys*, TEXAS PARKS & WILDLIFE, https://tpwd.texas.gov/education/resources/keep-texas-wild/vaqueros-and-cowboys/cowboys (last visited Sep. 7, 2022). Texas is also home to the world-famous NFL franchise, the Dallas Cowboys.

misleads consumers in California and nationwide to believe that the Products are Texas products.

48.      **Defendant's Website.** Defendant admits that its Products are advertised as Texas Products. On the "About" tab on Defendant's website, Defendant admits that it knows (and has always known) its Product labeling is false and deceptive. Defendant asks website visitors, "[s]o how is it that a tasty red pepper sauce made in North Carolina happens to be named 'Texas Pete' anyway?" The answer is simple: when trying to think of a name, Defendant's founders chose Texas because it "had a reputation for spicy cuisine." In revealing the thought process behind its brand name, Defendant admits that Texas's reputation was one they were trying to mimic and capitalize on when creating their brand. A true and correct image taken from Defendant's Website is depicted below. [26]

# The History of Texas Pete

**Before the first drop of Texas Pete hot sauce was ever tasted, there was a dream in the great imaginations of the Garner family. Here's their story.**

### THE YEAR WAS 1929.

"So how is it that a tasty red pepper sauce made in North Carolina happens to be named 'Texas Pete' anyway?" Legend has it that, when Sam Garner and his three sons, Thad, Ralph and Harold, were trying to come up with a brand name for this spicy new sauce they had created, a marketing advisor suggested the name "Mexican Joe" to connote the piquant flavor reminiscent of the favorite foods of our neighbors to the south. "Nope!" said the patriarch of the Garner family. "It's got to have an American name!" Sam suggested they move across the border to Texas, which also had a reputation for spicy cuisine. Then he glanced at son Harold, whose nickname was "Pete" and the Texas Pete cowboy was born. Movie cowboys were very popular in the 1930's, men like Tom Mix and Hopalong Cassidy, representing a sort of universal image of rugged independence and self-reliance, the perfect ideal for a family business trying to survive tough times. Actually, Texas Pete Hot Sauce was not the first product the Garner family made and sold. That distinction belonged to Garners' Barbecue Sauce.

---

[26] https://texaspete.com/about/

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.   |   22525 Pacific Coast Highway   |   Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

49.     Another true and correct screenshot of Defendant's website, which highlights an article featuring this admission, is reproduced below.[27] The article starts out, "[w]ith a name like Texas Pete, one would think the famed hot sauce is manufactured somewhere in the Lone Star state . . ."



50.     **Reasonable Consumer's Perception.** Defendant's labeling and advertising deceives reasonable consumers, like Plaintiff, into believing that the Products are Texas products, i.e., their ingredients are sourced in Texas, and the finished Products are manufactured in Texas.

51.     In fact, consumers are shocked when they discover the Products are not in fact made in Texas. One Tik Tok user exclaimed: "Stop! Texas Pete isn't from Texas? You're just making things up now . . . why isn't it called [] Carolina Pete's or something?"[28]

---

[27] https://texaspete.com/how-texas-pete-got-its-name-the-legend-of-texas-pete-sort-of-2013/
[28] *See* @ncmuseumofhistory, Tik-Tok, https://www.tiktok.com/@ncmuseumhistory/video/7054985211725073711?is_from



Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

52.     Similarly, another author stated that her "mind [was] blown" when she found out that the Products are not from Texas.[29]

53.     There is no indication on the Products' front labels that they are manufactured outside of Texas, let alone in North Carolina.

54.     Consumers do not view the back label of the Products when purchasing everyday food items such as hot sauce. The Product's label and advertising indicates it is a Texas hot sauce manufactured in Texas with ingredients sourced from Texas. So, Plaintiff did not view the Product's back label prior to purchasing the Product.

55.     By falsely and deceptively labeling its Products, Defendant not only takes advantage of the Texas reputation, but it goes against honest industry practice

_____

webapp=v1&item_id=7054985211725073711&web_id=6957459250235344390 (last visited Sep. 7, 2022).
[29] *See* Erica Landis, *Texas Pete Hot Sauce Isn't From The Lone Star State*, WIDE OPEN EATS, https://www.wideopeneats.com/texas-pete-hot-sauce/ (last visited Sep. 12, 2022).

and unfairly competes with its lawfully acting competitors.

56.     **Reliance.** During the course of its false, misleading, and deceptive advertising campaign, Defendant has sold millions of the Products based upon its misrepresentations. Plaintiff and the Class have suffered injury in fact and have lost money as a result of Defendant's false representations.

57.     Because of the history and popularity of Texas hot sauce, the Products' false and deceptive labeling would lead the reasonable consumer to believe the Products are in fact from Texas.

58.     **No Legitimate Business Reason.** There is no practical reason for the false or misleading labeling and advertising of the Products, other than to mislead consumers as to the actual origin of the Products. Through such false and misleading advertising, consumers purchase Texas Pete Products incorrectly thinking they are of Texan origin, thus providing Defendant with a financial windfall.

59.     Even if a consumer conducted an extremely close review of the Products' back labels, nothing would overcome the reasonable impression given by the front label that the Products are indeed made in Texas. While the Product states the name and location of TW Garner Food Co., it does not say "made in" or "manufactured in" North Carolina anywhere on the label. Rather, it says "Product of the U.S.A.," which merely conforms with the reasonable understanding that the Product is made in Texas. A true and correct image of the Products' back label is depicted below:



60.     Defendant's own interpretation of the Products' labels as indicative of Texas origin indicates a probability that a significant portion of the general

consuming public, acting reasonably under the circumstances, would have the same interpretation: that the Products are manufactured in Texas, using Texas ingredients.

61.    At all relevant times, Defendant has packaged, advertised, marketed, distributed, and sold the Products to consumers throughout California and the nation based on the misrepresentation that the Products are made in Texas, when they actually are not—Texas Pete Products are made in North Carolina.

**E.    Defendant's Conduct Unfairly Harms Competition**

62.    The demand for Texas hot sauce is steadily increasing and the market is poised for growth.

63.    New companies, often with significantly fewer resources than Defendant, are working hard to break into a market already heavily saturated with competition.

64.    Yet many of these companies have a hard time competing with major, established companies like Defendant—since consumers are unaware what distinguishes these "Texas" hot sauces.

65.    Other hot sauce brands that advertise an association with Texas are, in fact, made in Texas.

66.    For example, Truly Texas hot sauces have a similar "Texas" brand name and feature portions of the Texas state flag. But Truly Texas, true to its brand name, are manufactured in Houston, Texas. A true and correct image of the Truly Texas, Texas Fire Water product is depicted below:[30]

//
//
//
//
//

_____

[30] https://trulytexasfoods.com/product/texas-fire-water-hot-pepper-sauce/ (last visited Sep. 7, 2022).

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



67.    Similarly, Tears of Joy's "August in Austin" hot sauce is another popular Texas hot sauce. This hot sauce contains even less Texas imagery on its front label than the Products, but Tears of Joy is actually made in Texas, as advertised. A true and correct image of the Tears of Joy's August in Austin product is depicted below:[31]

---

[31] https://www.tearsofjoysauces.com/products/tears-of-joy-hot-sauce-shop-august-in-austin-hot-sauce?variant=25735899976 (last visited September 7, 2022).

CLASS ACTION COMPLAINT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265



68.    Makers of authentic Texas-made hot sauces are losing out on a large portion of the consumer market, because many people purchase the Products, instead of lawful competitor products, due to Defendant's false and deceptive labeling.

69.    This stifling impact on competition harms consumers and law-abiding brands who play by the rules and threatens market competition and growth. It also leaves consumers with *less choice*, making it *more likely* they will be duped into buying Texas Pete, reasonably, but incorrectly, thinking it is the authentic Texas hot sauce they desire. Less choice also causes consumers to pay higher prices at the cash register.

//

//

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

**F.     The Products are Substantially Similar**

70.     As described herein, Plaintiff purchased the Texas Pete Original Hot Sauce (the "Purchased Product"). The additional Products (collectively, the "Unpurchased Products") are substantially similar to the Purchased Product.

    a.  **Defendant.** All Products are manufactured, sold, marketed, advertised, labeled, and packaged by Defendant.

    b.  **Brand.**  All Products are sold under the same brand name: Texas Pete®.

    c.  **Purpose.** All Products are hot sauces used to provide flavoring to food (Texas-style flavor).

    d.  **Deceptive Labeling.** All Products implement the same deceptive labeling—including the brand name "Texas Pete," the lone star image, and the Texas cowboy image. But none of the Products are made in Texas or with Texas ingredients.

    e.  **Misleading Effect.**  The misleading effect of the labeling and marketing on consumers is the same for all Products—consumers over-pay a premium for authentic Texas products but receive Products that are not made in Texas or using Texas ingredients in violation of well-established state and federal law.

**G.     No Adequate Remedy at Law.**

71.     Plaintiff and members of the Class are entitled to equitable relief as no adequate remedy at law exists.

    a.  **Broader Statutes of Limitations.** The statutes of limitations for the causes of action pled herein vary. The limitations period is four years for claims brought under the UCL, which is one year longer than the statutes of limitations under the FAL and CLRA. In addition, the statutes of limitations vary for certain states' laws for breach of warranty and unjust enrichment/restitution, between approximately 2 and 6 years. Thus, California Subclass members

who purchased the Products more than 3 years prior to the filing of the complaint will be barred from recovery if equitable relief were not permitted under the UCL. Similarly, Nationwide Class members who purchased the Products prior to the furthest reach-back under the statute of limitations for breach of warranty, will be barred from recovery if equitable relief were not permitted for restitution/unjust enrichment.

b. **Broader Scope of Conduct.** In addition, the scope of actionable misconduct under the unfair prong of the UCL is broader than the other causes of action asserted herein. It includes, for example, Defendant's overall unfair marketing scheme to promote and brand the Products as Texas products, across a multitude of media platforms, including the Products' labels and packaging, over a long period of time, in order to gain an unfair advantage over competitor products and to take advantage of consumers' desire for products that comport with the labeling and advertising. The UCL also creates a cause of action for violations of law (such as statutory or regulatory requirements and court orders related to similar representations and omissions made on the type of products at issue). Thus, Plaintiff and Class members may be entitled to restitution under the UCL, while not entitled to damages under other causes of action asserted herein (e.g., the FAL requires actual or constructive knowledge of the falsity; the CLRA is limited to certain types of plaintiffs (an individual who seeks or acquires, by purchase or lease, any goods or services for personal, family, or household purposes) and other statutorily enumerated conduct). Similarly, unjust enrichment/restitution is broader than breach of warranty. For example, in some states,

breach of warranty may require privity of contract or pre-lawsuit notice, which are not typically required to establish unjust enrichment/restitution.  Thus, Plaintiff and Class members may be entitled to recover under unjust enrichment/restitution, while not entitled to damages under breach of warranty, because they purchased the products from third-party retailers or did not provide adequate notice of a breach prior to the commencement of this action.

c.  **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class because Defendant continues to misrepresent the Products as alleged herein. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm—none of which can be achieved through available legal remedies (such as monetary damages to compensate past harm). Further, injunctive relief, in the form of affirmative disclosures is necessary to dispel the public misperception about the Products that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products labeling and advertising is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Products' front label concerning the Products' true nature.  An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon, is also not

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

available through a legal remedy (such as monetary damages). In addition, Plaintiff is *currently* unable to accurately quantify the damages caused by Defendant's future harm, because discovery and Plaintiff's investigation has not yet completed, rendering injunctive relief all the more necessary. For example, because the court has not yet certified any class, the following remains unknown: the scope of the class, the identities of its members, their respective purchasing practices, prices of past/future Product sales, and quantities of past/future Product sales.

d.    **Public Injunction.** Further, because a "public injunction" is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

e.    **California vs. Nationwide Class Claims**. Violation of the UCL, FAL, and CLRA are claims asserted on behalf of Plaintiff and the California Subclass against Defendant, while breach of warranty and unjust enrichment/restitution are asserted on behalf of Plaintiff and the Nationwide Class. Dismissal of farther-reaching claims, such as restitution, would bar recovery for non-California members of the Class. In other words, legal remedies available or adequate under the California-specific causes of action (such as the UCL, FAL, and CLRA) have no impact on this Court's jurisdiction to award equitable relief under the remaining causes of action asserted on behalf of non-California putative class members.

f.    **Procedural Posture—Incomplete Discovery & Pre-Certification.** Lastly, this is an initial pleading in this action and discovery has not yet commenced and/or is at its initial stages. No class has been certified yet. No expert discovery has commenced

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

and/or completed. The completion of fact/non-expert and expert discovery, as well as the certification of this case as a class action, are necessary to finalize and determine the adequacy and availability of all remedies, including legal and equitable, for Plaintiff's individual claims and any certified class or subclass. Plaintiff therefore reserves his right to amend this complaint and/or assert additional facts that demonstrate this Court's jurisdiction to order equitable remedies where no adequate legal remedies are available for either Plaintiff and/or any certified class or subclass. Such proof, to the extent necessary, will be presented prior to the trial of any equitable claims for relief and/or the entry of an order granting equitable relief.

## VI.    CLASS ACTION ALLEGATIONS

72.    **Class Definition.** Plaintiff brings this action as a class action pursuant to Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated, and as members of the Classes defined as follows:

All residents of the United States who, within the applicable statute of limitations periods, purchased the Products for purposes other than resale ("**Nationwide Class**"); and

All residents of California who, within four years prior to the filing of this Complaint, purchased the Products for purposes other than resale ("**California Subclass**").

("Nationwide Class" and "California Subclass," collectively, "**Class**").

73.    **Class Definition Exclusions.** Excluded from the Class are: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, counsels, and/or subdivisions; and (iv) any

judicial officer presiding over this matter and person within the third degree of consanguinity to such judicial officer.

74.     **Reservation of Rights to Amend the Class Definition.** Plaintiff reserves the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

75.     **Numerosity.** The Class is comprised of many thousands of persons throughout the State of California and nationwide. The Class is so numerous that joinder of all members is impracticable and the disposition of their claims in a class action will benefit the parties and the Court.

76.     **Common Questions Predominate.** There are numerous and substantial questions of law or fact common to all members of the Class that predominate over any individual issues.  Included within the common questions of law or fact are:

a.  Whether Defendant engaged in unlawful, unfair, or deceptive business practices by advertising and selling the Products as alleged herein;

b.  Whether Defendant's conduct of advertising and selling the Products as Texan when they are not made in Texas constitutes an unfair method of competition, or unfair or deceptive act or practice, in violation of Civil Code section 1750, *et seq*;

c.  Whether Defendant used deceptive representations in connection with the sale of the Products in violation of Civil Code section 1750, *et seq*.;

d.  Whether Defendant represented that the Products have characteristics or quantities that they do not have in violation of Civil Code section 1750, *et seq*.;

e.  Whether Defendant advertised the Products with intent not to sell them as advertised in violation of Civil Code section 1750, *et seq*.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

f. Whether Defendant's labeling and advertising of the Products are untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

g. Whether Defendant knew or by the exercise of reasonable care should have known its labeling and advertising was and is untrue or misleading in violation of Business and Professions Code section 17500, *et seq*.;

h. Whether Defendant's conduct is an unfair business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

i. Whether Defendant's conduct is an unlawful business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

j. Whether Defendant's conduct is a fraudulent business practice within the meaning of Business and Professions Code section 17200, *et seq*.;

k. Whether Plaintiff and the Class paid more money for the Products than they actually received;

l. How much more money Plaintiff and the Class paid for the Products than they actually received;

m. Whether Defendant's conduct constitutes breach of warranty;

n. Whether Plaintiff and the Class are entitled to injunctive relief; and

o. Whether Defendant was unjustly enriched by their unlawful conduct.

77. **Typicality.** Plaintiff's claims are typical of the claims of the proposed Class, as the representations and omissions made by Defendant are uniform and consistent and are contained in advertisements and on packaging that was seen and relied on by Plaintiff and members of the class. Plaintiff's and Class Members' claims arise from the same practices and course of conduct and are based on the same legal theories.

78. **Adequacy.** Plaintiff is an adequate representative of the Class he seeks to represent because his interests do not conflict with the interests of the Class Members Plaintiff seeks to represent. Plaintiff will fairly and adequately protect

Class Members' interests and has retained counsel experienced and competent in the prosecution of complex class actions, including complex questions that arise in consumer protection litigation.

79.    **Superiority and Substantial Benefit:** A class action is superior to other methods for the fair and efficient adjudication of this controversy, since individual joinder of all members of the Class is impracticable and no other group method of adjudication of all claims asserted herein is more efficient and manageable for at least the following reasons:

a.   The claims presented in this case predominate over any questions of law or fact, if any exist at all, affecting any individual member of the Class;

b.   Absent a Class, the members of the Class will continue to suffer damage and Defendant's unlawful conduct will continue without remedy while Defendant profits from and enjoy its ill-gotten gains;

c.   Given the size of individual Class Members' claims, few, if any, Class Members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent Class Members have no substantial interest in individually controlling the prosecution of individual actions;

d.   When the liability of Defendant has been adjudicated, claims of all members of the Class can be administered efficiently and/or determined uniformly by the Court; and

e.   This action presents no difficulty that would impede its management by the Court as a class action, which is the best available means by which Plaintiff and Class Members can seek redress for the harm caused to them by Defendant.

80.    **Inconsistent Rulings.** Because Plaintiff seeks relief for all members of the Class, the prosecution of separate actions by individual members would create a

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

risk of inconsistent or varying adjudications with respect to individual members of the Class, which would establish incompatible standards of conduct for Defendant.

81. **Injunctive/Equitable Relief.** The prerequisites to maintaining a class action for injunctive or equitable relief pursuant to Fed. R. Civ. P. 23(b)(2) are met as Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or equitable relief with respect to the Class as a whole.

82. **Manageability.** Plaintiff and Plaintiff's counsel are unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**COUNT ONE**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code §§ 17200, et seq.)**

**(*On Behalf of the California Subclass*)**

83. **Incorporation by Reference.** Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

84. **California Subclass.** Plaintiff brings this cause of action pursuant to Business and Professions Code Section 17200, *et seq.*, on his own behalf and a California Subclass who purchased the Products within the applicable statute of limitations.

85. **The UCL.** California Business & Professions Code, sections 17200, *et seq.* (the **"UCL"**) prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising."

86. **False Advertising Claims.** Defendant in its advertising and packaging of the Products makes false and misleading statements regarding the quality and characteristics of the Products, particularly marketing and representing the Products

29

as Texan-made hot sauce. Such claims appear on the label, packaging, and advertising of the Products, which are sold at retailers in the State of California and across the nation, as well as on Defendant's official website.

87. **Deliberately False and Misleading.** Defendant does not have any reasonable basis for its claims about the Products because the Products are not made in Texas. Defendant knew and knows that the Products are not truly or manufactured in Texas, yet Defendant intentionally advertised and marketed the Products to deceive reasonable consumers into believing that Products are made in Texas.

88. **False Advertising Claims Cause Purchase of Products.** Defendant's labeling and advertising of the Products led to, and continues to lead to, reasonable consumers, including Plaintiff, believing that the Products are made in Texas.

89. **Injury in Fact.** Plaintiff and the California Subclass have suffered injury in fact and have lost money or property as a result of and in reliance upon Defendant's False Advertising Claims—namely Plaintiff and the California Subclass lost the purchase price for the Products they bought from the Defendant.

90. **Conduct Violates the UCL.** Defendant's conduct, as alleged herein, constitutes unfair, unlawful, and fraudulent business practices pursuant to the UCL. The UCL prohibits unfair competition and provides, in pertinent part, that "unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising." Cal. Bus & Prof. Code § 17200. In addition, Defendant's use of various forms of advertising media to advertise, call attention to, or give publicity to the sale of goods or merchandise that are not as represented in any manner constitutes unfair competition, unfair, deceptive, untrue or misleading advertising, and an unlawful business practice within the meaning of Business and Professions Code Sections 17200 and 17531, which advertisements have deceived and are likely to deceive the consuming public, in violation of Business and Professions Code Section 17200.

91.    **No Reasonably Available Alternatives/Legitimate Business Interests.** Defendant failed to avail themselves of reasonably available, lawful alternatives to further their legitimate business interests.

92.    **Business Practice.** All of the conduct alleged herein occurred and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern, practice and/or generalized course of conduct, which will continue on a daily basis until Defendant voluntarily alters its conduct or Defendant is otherwise ordered to do so.

93.    **Injunction.** Pursuant to Business and Professions Code Sections 17203 and 17535, Plaintiff and the members of the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling and advertising the sale and use of the Products. Likewise, Plaintiff and the members of the California Subclass seek an order requiring Defendant to disclose such misrepresentations, and to preclude Defendant's failure to disclose the existence and significance of said misrepresentations.

94.    **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the UCL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the California Subclass have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the UCL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

95.    **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for violation of the UCL on behalf of Plaintiff and the California

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Subclass. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was, at all times, aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

### A.    "Unfair" Prong

96.    **Unfair Standard.** Under California's False Advertising Law, Cal. Bus. & Prof. Code Section 17200, *et seq*., a challenged activity is "unfair" when "any injury it causes outweighs any benefits provided to consumers and the injury is one that the consumers themselves could not reasonably avoid." *Camacho v. Auto Club of Southern California,* 142 Cal. App. 4th 1394, 1403 (2006).

97.    **Injury.** Defendant's action of labeling and advertising the Products as if they were made in Texas when they were not does not confer any benefit to consumers. Defendant's action of labeling and advertising the Products as if they were made in Texas when they were not causes injuries to consumers who do not receive Products they reasonably expected.

98. **Balancing Test.** Some courts conduct a balancing test to decide if a challenged activity amounts to unfair conduct under California Business and Professions Code Section 17200. In so doing, they "weigh the utility of the Defendant's conduct against the gravity of the harm to the alleged victim." *Davis v. HSBC Bank Nevada, N.A.,* 691 F.3d 1152, 1169 (9th Cir. 2012).

99. **No Utility.** Here, Defendant's conduct of labeling the Products as alleged herein when the Products are not made or manufactured in Texas has no utility and financially harms purchasers. Thus, the utility of Defendant's conduct is vastly outweighed by the gravity of harm.

100. **Legislative Declared Policy.** Some courts hold that "unfairness must be tethered to some legislative declared policy or proof of some actual or threatened impact on competition." *Lozano v. AT&T Wireless Servs. Inc.,* 504 F. 3d 718, 735 (9th Cir. 2007).

101. The California Legislature has outlawed making misleading claims of origin in connection with consumer good. Cal. Civ. Code § 1770(a)(4). Therefore, Defendant's unfair conduct is tethered to the legislative declared policy regarding misleading claims of geographic origin.

102. **Unfair Conduct.** Defendant's labeling and advertising of the Products, as alleged herein, is false, deceptive, misleading, and unreasonable, and constitutes unfair conduct. Defendant knew or should have known of its unfair conduct. Defendant's misrepresentations constitute an unfair business practice within the meaning of California Business and Professions Code Section 17200.

103. **Reasonably Available Alternatives.** There existed reasonably available alternatives to further Defendant's legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as alleged herein.

104. **Defendant's Wrongful Conduct.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful

conduct is part of a pattern or generalized course of conduct repeated on thousands of occasions daily.

105.   **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practices of labeling the Products as alleged herein.

106.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unfair conduct. Plaintiff and the California Subclass paid an unwarranted premium for these Products. Specifically, Plaintiff and the California Subclass paid for Texas Pete Products that are not made in Texas. Plaintiff and the California Subclass would not have purchased the Products, or would have paid substantially less for the Products, if they had known that the Products' advertising and labeling were deceptive. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

### B.   "Fraudulent" Prong

107.   **Fraud Standard.** The UCL considers conduct fraudulent (and prohibits said conduct) if it is likely to deceive members of the public. *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 1267 (1992).

108.   **Fraudulent & Material Challenged Representations.** Defendant labeled and advertised the Products as alleged herein with the intent to sell the Products to consumers, including Plaintiff and the California Subclass. The labeling and advertising as alleged herein is false and Defendant knew or should have known of its falsity. The labeling and advertising is likely to deceive consumers into purchasing the Products because they are material to the average, ordinary, and reasonable consumer.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

109.  **Fraudulent Business Practice.** As alleged herein, the misrepresentations by Defendant constitute a fraudulent business practice in violation of California Business & Professions Code Section 17200.

110.  **Reasonable and Detrimental Reliance.** Plaintiff and the California Subclass reasonably and detrimentally relied on the material and false labeling and advertising to their detriment in that they purchased the Products.

111.  **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as being from Texas.

112.  **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

113.  **Injunction.** Pursuant to Business and Professions Code Sections 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant from continuing to engage, use, or employ its practice of labeling the Products as alleged herein.

114.  **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's fraudulent conduct. Plaintiff paid an unwarranted premium for the Products.  Specifically, Plaintiff and the California Subclass paid for products that they believed were made in Texas, when, in fact, the Products are made or manufactured in North Carolina. Plaintiff and the California Subclass would not have purchased the Products if they had known the truth. Accordingly, Plaintiff seeks damages, restitution, and/or disgorgement of ill-gotten gains pursuant to the UCL.

### C.  "Unlawful" Prong

115.  **Unlawful Standard.** The UCL identifies violations of other laws as "unlawful practices that the unfair competition law makes independently

actionable." *Velazquez v. GMAC Mortg. Corp.,* 605 F. Supp. 2d 1049, 1068 (C.D. Cal. 2008).

116.   **Violations of CLRA and FAL.**  Defendant's labeling of the Products, as alleged herein, violates California Civil Code sections 1750, *et seq.* (the "**CLRA**") and California Business and Professions Code sections 17500, *et seq.* (the "**FAL**") as set forth below in the sections regarding those causes of action.

117.   **Additional Violations.** Defendant's conduct in making the false representations described herein constitutes a knowing failure to adopt policies in accordance with and/or adherence to applicable laws, as set forth herein, all of which are binding upon and burdensome to their competitors. This conduct engenders an unfair competitive advantage for Defendant, thereby constituting an unfair, fraudulent and/or unlawful business practice under California Business & Professions Code sections 17200-17208. Additionally, Defendant's misrepresentations of material facts, as set forth herein, violate California Civil Code sections 1572, 1573, 1709, 1710, 1711, and 1770, as well as the common law.

118.   **Unlawful Conduct.** Defendant's packaging, labeling, and advertising of the Products, as alleged herein, are false, deceptive, misleading, and unreasonable, and constitute unlawful conduct. Defendant knew or should have known of its unlawful conduct.

119.   **Reasonably Available Alternatives.** Defendant had reasonably available alternatives to further its legitimate business interests, other than the conduct described herein. Defendant could have refrained from labeling the Products as alleged herein.

120.   **Business Practice.** All of the conduct alleged herein occurs and continues to occur in Defendant's business. Defendant's wrongful conduct is part of a pattern or generalized course of conduct.

121.   **Injunction.** Pursuant to Business and Professions Code Section 17203, Plaintiff and the California Subclass seek an order of this Court enjoining Defendant

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

from continuing to engage, use, or employ its practice of false and deceptive advertising of the Products.

122.   **Causation/Damages.** Plaintiff and the California Subclass have suffered injury in fact and have lost money as a result of Defendant's unlawful conduct. Plaintiff and the California Subclass paid an unwarranted premium for the Products. Plaintiff and the California Subclass would not have purchased the Products if they had known that Defendant's purposely deceived consumers into believing that the Texas Pete Products are truly authentic Texan hot sauce. Accordingly, Plaintiff seeks damages, restitution and/or disgorgement of ill-gotten gains pursuant to the UCL.

**COUNT TWO**

**Violation of California False Advertising Law**

**(Cal. Bus. & Prof. Code §§ 17500, et seq.)**

***(On Behalf of the California Subclass)***

123.   **Incorporation by reference.** Plaintiff repeats and re-alleges the allegations set forth in the preceding paragraphs and incorporates the same as if set forth herein at length.

124.   **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

125.   **FAL Standard.**  The False Advertising Law, codified at Cal. Bus. & Prof. Code section 17500, *et seq.*, prohibits "unfair, deceptive, untrue or misleading advertising[.]"

126.   **False & Material Labeling and Advertising Disseminated to Public.** Defendant violated section 17500 when it advertised and marketed the Products through the unfair, deceptive, untrue, and misleading Texan origin representation disseminated to the public through the Products' labeling, packaging, and advertising. These representations were false because the Products do not conform

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

to them. The representations were material because they are likely to mislead a reasonable consumer into purchasing the Products.

127. **Knowledge.** In making and disseminating the representations alleged herein, Defendant knew or should have known that the representations were untrue or misleading, and acted in violation of § 17500.

128. **Intent to sell.** Defendant's labeling and advertising was specifically designed to induce reasonable consumers, like Plaintiff and the California Subclass, to purchase the Products.

129. **Causation/Damages.** As a direct and proximate result of Defendant's misconduct in violation of the FAL, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of the FAL in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

130. **Punitive Damages.** Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law.  Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving.  Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff.  Defendant's misconduct is oppressive as, at all relevant times, said

conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct.  Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights.  Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

**COUNT THREE**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civ. Code §§ 1750, et seq.)**

**(*On Behalf of the California Subclass*)**

131.  **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

132.  **California Subclass.** Plaintiff brings this claim individually and on behalf of the California Subclass who purchased the Products within the applicable statute of limitations.

133.  **CLRA Standard.** The CLRA provides that "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer are unlawful."

134.  **Goods/Services.** The Products are "goods," as defined by the CLRA in California Civil Code §1761(a).

135.  **Defendant.** Defendant is a "person," as defined by the CLRA in California Civil Code §1761(c).

136.  **Consumers.** Plaintiff and members of the California Subclass are "consumers," as defined by the CLRA in California Civil Code §1761(d).

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

137.   **Transactions.** The purchase of the Products by Plaintiff and members of the California Subclass are "transactions" as defined by the CLRA under California Civil Code section 1761(e).

138.   **Violations of the CLRA.** Defendant violated the CLRA by selling the Products to Plaintiff and the California Subclass through the false, misleading, deceptive, and fraudulent labeling and advertising alleged herein: Section 1770(a)(4) by "[u]sing deceptive representations or designations of geographic origin in connection with" the Products.

139.   **Knowledge.** Defendant's uniform and material representations and omissions regarding the Products were likely to deceive, and Defendant knew or should have known that its representations and omissions were untrue and misleading.

140.   **Malicious.** Defendant's conduct is malicious, fraudulent, and wanton in that Defendant intentionally misled and withheld material information from consumers, including Plaintiff, to increase the sale of the Products.

141.   **Plaintiff Could Not Have Avoided Injury.** Plaintiff and members of the California Subclass could not have reasonably avoided such injury.  Plaintiff and members of the California Subclass were unaware of the existence of the facts that Defendant suppressed and failed to disclose, and Plaintiff and members of the California Subclass would not have purchased the Products and/or would have purchased them on different terms had they known the truth.

142.   **Causation/Reliance/Materiality.** Plaintiff and the California Subclass suffered harm as a result of Defendant's violations of the CLRA because they relied on the labeling and advertising in deciding to purchase the Products. The labeling and advertising was a substantial factor. The labeling and advertising was material because a reasonable consumer would consider it important in deciding whether to purchase the Products.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

143.   **Section 1782(d)—Prelitigation Demand/Notice.** Pursuant to California Civil Code, section 1782, more than thirty days prior to the filing of this complaint, on or about February 2, 2022 Plaintiff's counsel, acting on behalf of Plaintiff White and all members of the Class, mailed a Demand Letter, via U.S. certified mail, return receipt requested, addressed to Defendant T.W. Garner Food Co. at its headquarters and principal place of business (614 West 14th Street, Winston-Salem, NC 27101) and its registered agent for service of process (Ann Garner Riddle, 4045 Indiana Avenue, Winston-Salem, NC 27101), which were delivered to those addresses on or about February 14, 2022 and February 18, 2022, respectively. *See* **Exhibit 2** [Pre-Lit Demand Letter].

144.   **Causation/Damages.**  As a direct and proximate result of Defendant's misconduct in violation of the CLRA, Plaintiff and members of the California Subclass were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for violation of this Act in the form of damages, restitution, disgorgement of ill-gotten gains to compensate Plaintiff and the California Subclass for said monies.

145.   **Injunction.** Given that Defendant's conduct violated California Civil Code section 1780, Plaintiff and members of the California Subclass are entitled to seek, and do hereby seek, injunctive relief to put an end to Defendant's violations of the CLRA and to dispel the public misperception generated, facilitated, and fostered by Defendant's false advertising campaign. Plaintiff has no adequate remedy at law. Without equitable relief, Defendant's unfair and deceptive practices will continue to harm Plaintiff and the California Subclass. Accordingly, Plaintiff seeks an injunction to enjoin Defendant from continuing to employ the unlawful methods, acts, and practices alleged herein pursuant to section 1780(a)(2), and otherwise

require Defendant to take corrective action necessary to dispel the public misperception engendered, fostered, and facilitated through Defendant's deceptive labeling of the Products as alleged herein.

146. **Punitive Damages**. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant were, at all times, aware of the probable dangerous consequences of their conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant. Accordingly, Plaintiff seeks an award of punitive damages against Defendant.

**COUNT FOUR**

**Breach of Warranty**

(***On Behalf of the Nationwide Class and California Subclass***)

147. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

148.   **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

149.   **Express Warranty.** By advertising and selling the Products at issue, Defendant made promises and affirmations of fact on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising constitute express warranties and became part of the basis of the bargain between Plaintiff and members of the Class and Defendant. Defendant purports, through the Products' labeling and advertising, to create express warranties that the Products, among other things, conform to the labeling and advertising.

150.   **Implied Warranty of Merchantability.** By advertising and selling the Products at issue, Defendant, a merchant of goods, made promises and affirmations of fact that the Products are merchantable and conform to the promises or affirmations of fact made on the Products' packaging and labeling, and through its marketing and advertising, as described herein. This labeling and advertising, combined with the implied warranty of merchantability, constitute warranties that became part of the basis of the bargain between Plaintiff and members of the Class and Defendant---to wit, that the Products, among other things, conform to the labeling and advertising.

151.   **Breach of Warranty.** Contrary to Defendant's warranties, the Products do not conform to the labeling and advertising and, therefore, Defendant breached its warranties about the Products and their qualities.

152.   **Causation/Remedies.** As a direct and proximate result of Defendant's breach of warranty, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages including, but not limited to, the amounts paid for the Products, and any interest that

would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for breach of warranty in the form of damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

## COUNT FIVE

### Unjust Enrichment/Restitution

### (*On Behalf of the Nationwide Class and California Subclass*)

153. **Incorporation by Reference.** Plaintiff re-alleges and incorporates by reference all allegations contained in this complaint, as though fully set forth herein.

154. **Nationwide Class & California Subclass.** Plaintiff brings this claim individually and on behalf of the Nationwide Class and California Subclass (the Class) who purchased the Products within the applicable statute of limitations.

155. **Plaintiff/Class Conferred a Benefit.** By purchasing the Products, Plaintiff and members of the Class conferred a benefit on Defendant in the form of the purchase price of the Products.

156. **Defendant's Knowledge of Conferred Benefit.** Defendant had knowledge of such benefit and Defendant appreciated the benefit because, were consumers not to purchase the Products, Defendant would not generate revenue from the sales of the Products.

157. **Defendant's Unjust Receipt Through Deception.** Defendant's knowing acceptance and retention of the benefit is inequitable and unjust because the benefit was obtained by Defendant's fraudulent, misleading, and deceptive representations and omissions.

158. **Causation/Damages.** As a direct and proximate result of Defendant's unjust enrichment, Plaintiff and members of the Class were harmed in the amount of the purchase price they paid for the Products. Further, Plaintiff and members of the Class have suffered and continue to suffer economic losses and other damages

Clarkson Law Firm, P.C. | 22525 Pacific Coast Highway | Malibu, CA 90265

including, but not limited to, the amounts paid for the Products, and any interest that would have accrued on those monies, in an amount to be proven at trial. Accordingly, Plaintiff seeks a monetary award for unjust enrichment in damages, restitution, and/or disgorgement of ill-gotten gains to compensate Plaintiff and the Class for said monies, as well as injunctive relief to enjoin Defendant's misconduct to prevent ongoing and future harm that will result.

159. **Punitive Damages.** Plaintiff seeks punitive damages pursuant to this cause of action for unjust enrichment on behalf of Plaintiff and the Class. Defendant's unfair, fraudulent, and unlawful conduct described herein constitutes malicious, oppressive, and/or fraudulent conduct warranting an award of punitive damages as permitted by law. Defendant's misconduct is malicious as Defendant acted with the intent to cause Plaintiff and consumers to pay for Products that they were not, in fact, receiving. Defendant willfully and knowingly disregarded the rights of Plaintiff and consumers as Defendant was aware of the probable dangerous consequences of its conduct and deliberately failed to avoid misleading consumers, including Plaintiff. Defendant's misconduct is oppressive as, at all relevant times, said conduct was so vile, base, and/or contemptible that reasonable people would look down upon it and/or otherwise would despise such corporate misconduct. Said misconduct subjected Plaintiff and consumers to cruel and unjust hardship in knowing disregard of their rights. Defendant's misconduct is fraudulent as Defendant, at all relevant times, intentionally misrepresented and/or concealed material facts with the intent to deceive Plaintiff and consumers. The wrongful conduct constituting malice, oppression, and/or fraud was committed, authorized, adopted, approved, and/or ratified by officers, directors, and/or managing agents of Defendant.

//

//

//

CLASS ACTION COMPLAINT

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265

## VII.   **PRAYER FOR RELIEF**

160.   WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, prays for judgment against Defendant as follows:

a.   **Certification:** For an order certifying this action as a class action, appointing Plaintiff as the Class Representative, and appointing Plaintiff's Counsel as Class Counsel;

b.   **Declaratory Relief:** For an order declaring that Defendant's conduct violates the statutes and laws referenced herein;

c.   **Injunction:** For an order requiring Defendant to immediately cease and desist from selling the unlawful Products in violation of law; enjoining Defendant from continuing to market, advertise, distribute, and sell the Products in the unlawful manner described herein; requiring Defendant to engage in an affirmative advertising campaign to dispel the public misperception of the Products resulting from Defendant's unlawful conduct; and requiring all further and just corrective action, consistent with permissible law and pursuant to only those causes of action so permitted;

d.   **Damages/Restitution/Disgorgement:** For an order awarding monetary compensation in the form of damages, restitution, and/or disgorgement to Plaintiff and the Class, consistent with permissible law and pursuant to only those causes of action so permitted;

e.   **Punitive Damages/Penalties:** For an order awarding punitive damages, statutory penalties, and/or monetary fines, consistent with permissible law and pursuant to only those causes of action so permitted;

f.   **Attorneys' Fees & Costs:** For an order awarding attorneys' fees and costs, consistent with permissible law and pursuant to only those causes of action so permitted;

g.   **Pre/Post-Judgment Interest:** For an order awarding pre-judgment and post-judgment interest, consistent with permissible law and pursuant to only those causes of action so permitted; and

h.   **All Just & Proper Relief:** For such other and further relief as the Court deems just and proper.

## VIII.  JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all triable issues.


Dated: September 12, 2022                    **CLARKSON LAW FIRM, P.C.**

                                             By: _/s/ Zachary T. Chrzan_
                                                 Ryan J. Clarkson, Esq.
                                                 Zachary T. Chrzan, Esq.

                                                 *Attorneys for Plaintiff*

Clarkson Law Firm, P.C.  |  22525 Pacific Coast Highway  |  Malibu, CA 90265