O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

PHILLIP WHITE,

Plaintiff,

v.

T.W. GARNER FOOD CO.,

Defendant.

Case No.: 2:22-cv-06503-MEMF(MRWx)

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS [ECF NO. 12]**

Before the Court is the Motion to Dismiss filed by Defendant T.W. Garner Food Co. ECF No. 12. For the reasons herein, the Court hereby DENIES the Motion.

/ / /

/ / /

I.    **Factual Background**[1]

Plaintiff Phillip White ("White") is an individual residing in Los Angeles, California. Compl. ¶ 20. Defendant T.W. Garner Food Co. ("T.W. Garner") is the owner and distributor of Texas Pete hot sauce products, including Texas Pete Original Hot Sauce ("Original Product"), Texas Pete Hotter Hot Sauce, and Texas Pete Roasted Garlic Hot Sauce (collectively, the "Products"). *Id.* at ¶¶ 15, 21; Ex. 1, ECF No. 1-1("Product Images"). It manufactures its products in Winston-Salem, North Carolina. *Id.* at ¶ 43. T.W. Garner does not use ingredients sourced from Texas. *Id.* at ¶ 44. The T.W. Garner website explicitly admits that while its Products are advertised as "Texas" products, the Products are, and have always been, manufactured in North Carolina. *Id.* at ¶ 48.

"A hot sauce is distinctly 'Texas' if it is made in the state of Texas, using Texas ingredients and flavor profiles." *Id.* at ¶ 32. The state of Texas is known for its hot sauce, and there is consumer appeal for Texas-made products. *Id.* at ¶¶ 8, 37.

The Products' labeling includes "a white lone star" reminiscent of the star on the Texas State flag, as well as a cartoon image of a cowboy throwing a lasso.[2] *Id.* at ¶¶ 40-41; Product Images.

True and correct images of the Products' labels are set forth below:

---

[1] Unless otherwise indicated, the following factual background is derived from the Complaint. ECF No. 1 ("Complaint" or "Compl.").

[2] The cowboy image is also etched on the front of the glass bottle itself. Compl. ¶ 41.




ECF No. 1-1 ("Compl. Ex. 1").

The Products include a back label that provides the T.W. Garner name, and states "Winston-Salem, NC 27105," as well as the phrase "Product of the U.S.A.," as set forth below:

# TW GARNER FOOD CO.
WINSTON-SALEM, NC 27105
PRODUCT OF THE U.S.A.
May be partially produced with genetic engineering.

Compl. ¶ 59.

In or around September 2021, White purchased a bottle of the Original Product from a Ralphs Grocery Store in Los Angeles, CA for approximately $3.00. *Id.* at ¶ 20. At the time of the purchase, White, relying on the language and imagery on the Original Product's label, believed that the Original Product was a product manufactured in Texas. *Id.* If White had been aware that the

1  Original Product was not manufactured in Texas, he would not have purchased the Original Product,

2  or he would have paid significantly less for it. *Id.* ¶ 20.

3  **II.   Procedural History**

4      On September 12, 2022, White filed the instant putative class action against T.W. Garner

5  asserting the following five causes of action: (1) violation of California Unfair Competition Law

6  ("UCL"), Cal. Bus. & Prof. Code § 17200, *et seq.*; (2) violation of California False Advertising Law

7  ("FAL"), Cal. Bus. & Prof. Code § 17500, *et seq.*; (3) violation of California Consumers Legal

8  Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; (4) breach of warranty; and (5) unjust

9  enrichment/restitution. *See generally* Compl. On November 10, 2022, T.W. Garner filed the instant

10  Motion to Dismiss. ECF No. 12. ("Motion" or "Mot."). The Motion was fully briefed as of April 6,

11  2023. ECF Nos. 19 ("Opposition" or "Opp'n"); 20 ("Reply").

12  **III.   Applicable Law**

13      **A.  Motion to Dismiss Pursuant to Rule 12(b)(6)**

14      Under Federal Rule of Civil Procedure Rule 12(b)(6), a party may file a motion to dismiss

15  for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The purpose

16  of Rule 12(b)(6) is to enable defendants to challenge the legal sufficiency of claims asserted in a

17  complaint. *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987). A district

18  court properly dismisses a claim under Rule 12(b)(6) if the complaint fails to allege sufficient facts

19  to support a cognizable legal theory. *See Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d

20  1156, 1159 (9th Cir. 2016).

21      "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to

22  'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

23  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The plausibility standard is not

24  akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has

25  acted unlawfully." *Id.* While a complaint does not need detailed factual allegations, a plaintiff's

26  obligation to provide the grounds of his entitlement to relief requires more than "[t]hreadbare recitals

27  of the elements of a cause of action." *Id.* "Determining whether a complaint states a plausible claim

28  for relief is 'a context-specific task that requires the reviewing court to draw on its judicial

4

1  experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (quoting

2  *Iqbal*, 556 U.S. at 679).

3       When evaluating a complaint under Rule 12(b)(6), the court "must accept all well-pleaded

4  material facts as true and draw all reasonable inferences in favor of the plaintiff." *Caltex*, 824 F.3d at

5  1159; *see also Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008)

6  ("We accept factual allegations in the complaint as true and construe the pleadings in the light most

7  favorable to the nonmoving party."). This tenet, however, is "inapplicable to legal conclusions."

8  *Iqbal*, 556 U.S. at 678.

9       **B.  Rule 9 Heightened Pleading Standard**

10       While all complaints must plead sufficient factual allegations to survive a 12(b)(6) motion,

11  allegations containing elements of fraud are held to a heightened pleading standard. Under Federal

12  Rule of Civil Procedure 9(b), when alleging fraud or mistake, a party must state with "particularity

13  the circumstances constituting fraud or mistake. Fed. R. Civ. P. 9(b). "Malice, intent, knowledge,

14  and other conditions of a person's mind may be alleged generally." *Id.* "A pleading is sufficient

15  under [R]ule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare

16  an adequate answer from the allegations. [Citation] While statements of the time, place, and nature

17  of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are

18  insufficient." *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citing *Wool

19  v. Tandem Computs., Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987)). Further, the Ninth Circuit has made

20  clear that this heightened pleading standard also applies to fraudulent concealment claims. *See

21  Kearns v. Ford Motor*, 567 F.3d 1120, 1125–27 (9th Cir. 2009).

22       **IV.   Discussion**
                **A.  White's California Consumer Protection Claims (Counts 1-3) Are Adequately
23                    Pleaded**

24

25       White brings his claims under the UCL (Count 1), the FAL (Count 2), and the CLRA (Count

26  3). *See generally*, Compl. All three of these California statutes prohibit unlawful, unfair, or

27  fraudulent business practices. *Ebner*, 838 F.3d at 963. All three statutes have similar goals: the UCL

28  prohibits "any unlawful, unfair, or fraudulent business act or practice." Cal. Bus. & Prof. Code §

1   17200; the FAL prohibits false or misleading advertising, which "is untrue or misleading, and which

2   is known, or . . . should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500; and

3   the CLRA prohibits specific "unfair methods of competition and unfair or deceptive acts . . .

4   intended to result or that results in the sale or lease of goods or services to any customer." Cal. Civ.

5   Code § 1770(a). These laws prohibit not only false advertising, "but also advertising which[,]

6   although true, is either actually misleading or which has a capacity, likelihood or tendency to

7   deceive or confuse the public.'" *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)

8   (quoting *Kasky v. Nike, Inc.*, 45 P.3d 243, 250 (Cal. 2002) (bracketed text in original)). As each

9   statute relies on the perspective of the "reasonable customer," courts generally analyze all three

10   together. *See Consumer Advocs. v. Echostar Satellite Corp.*, 8 Cal. Rptr. 3d 22, 29 (Cal. Ct. App.

11   2003) (finding that the "reasonable consumer standard" equally applies to the UCL, FAL, and

12   CLRA.); *Kasky*, 45 P.3d at 250 (summarizing California state jurisprudence and finding that "[a]ny

13   violation of the false advertising law . . . necessarily violates the UCL.") (citations and internal

14   quotation marks omitted).

15        To succeed under the reasonable consumer test, a plaintiff must establish that a product's

16   packaging is likely to deceive a member of the public. *Williams*, 552 F.3d at 938 (citing *Freeman v.

17   Time, Inc.*, 68 F.3d 285, 289 (9th Cir. 1995)); *see also Kasky*, 45 P.3d at 250 ("[T]o state a claim . . .

18   it is necessary only to show that members of the public are likely to be deceived.") (internal citations

19   and quotation marks omitted). "This requires more than a mere possibility that [the] label 'might

20   conceivably be misunderstood by some few consumers viewing it in an unreasonable

21   manner.'[Citation] Rather, the reasonable consumer standard requires a probability 'that a significant

22   portion of the *general consuming public* or *of targeted consumers*, acting reasonably in the

23   circumstances, could be misled.'" *Ebner*, 838 F.3d at 965 (emphasis added) (internal citations

24   omitted) (quoting *Lavie v. Procter & Gamble Co.*, 129 Cal. Rptr. 2d 486, 495 (Cal. Ct. App. 2003)).

25   And while the question of "whether a business practice is deceptive will usually be a question of fact

26   not appropriate for decision on [a 12(b)(6) motion to dismiss]," there are rare situations where a

27   motion to dismiss may be granted upon review of the advertisement or product packaging at issue."

28   *Williams*, 552 F.3d at 938–39. Dismissal is appropriate where it would be "impossible for the

1    plaintiff to prove that a reasonable consumer was likely to be deceived" based on what is alleged. *Id.*

2    at 939.

3          Many courts have considered the question of what satisfies the "likely to deceive" standard,

4    and the Ninth Circuit recently distilled three key themes from these cases. *See Moore v. Mars*

5    *Petcare US, Inc.*, 966 F.3d 1007, 1017-1018 (9th Cir. 2020); *see also Govea v. Gruma Corp.*, No.

6    CV 20-8585-MWF (JCx), 2021 WL 1557748, at *4–5 (C.D. Cal. Mar. 1, 2021) (collecting cases).

7    "First, '[l]iteral truth can sometimes protect a product manufacturer from a misleading claim, but it

8    is no guarantee,' 'whereas there is no protection for literal falseness.'" *Moore*, 966 F.3d at 1017

9    (citation omitted). "Second, qualifiers in packaging, usually on the back of a label or in ingredient

10   lists, "can ameliorate any tendency of the label to mislead. . . . If, however, 'a back label ingredients

11   list . . . conflict[s] with, rather than confirm[s], a front label claim,' the plaintiff's claim is not

12   defeated." *Id.* at 1017 (citing *Brady v. Bayer Corp.*, 237 Cal. Rptr. 3d 683, 691–92 (Cal. Ct. App.

13   2018) (citation omitted)). Finally, "brand names *by themselves* can be misleading in the context of

14   the product being marketed.[Citation] Descriptive brand names require of the consumer little

15   thought, which can make consumers susceptible to purchasing because *they won't have the time or*

16   *interest to read about [the product] on [the] website or the back of the box*." *Id.* (emphasis in

17   original) (quotation marks and internal citations omitted).

18         In addition, the Rule 9(b) heightened pleading standard requires a plaintiff asserting claims

19   under the UCL, the FAL, and the CLRA to "state with particularity the circumstances constituting

20   fraud." Fed. R. Civ. P. 9(b); *see Moore*, 966 F.3d at 1019–20  (holding that claims under the UCL,

21   the FAL, and the CLRA are based in a theory of fraud and must meet the Rule 9(b) heightened

22   pleading standard). The complaint must therefore identify the "who, what, when, where, and how"

23   of the fraudulent misconduct, "as well as what is false or misleading about" it, and "why it is false."

24   *Cafasso v. Gen. Dynamics*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks omitted);

25   *see also Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires that] [t]he

26   complaint . . . specify such facts as the times, dates, places, benefits received, and other details of the

27   alleged fraudulent activity.").

28

7

i.   White could plausibly prove that a reasonable consumer would be deceived by the Products' labeling

T.W. Garner seeks dismissal of White's UCL, CLRA, and FAL claims on the grounds that the Complaint lacks allegations that satisfy the "reasonable consumer" standard. Mot. at 5–13. White's allegations rest on the Products' packaging—namely, the presence of "a white lone star" reminiscent of the star on the Texas State flag, the cartoon image of a cowboy throwing a lasso, and the brand name "Texas Pete."[3] Opp'n at 5. According to White, a "reasonable interpretation" of the Product's labels would lead a consumer to believe that the Products are produced in Texas. Opp'n at 5–12. T.W. Garner maintains that a reasonable consumer is unlikely to be misled by the Product's label as "[n]othing on the Product's packaging or labeling misrepresents any facts as to origin," Mot. at 7; T.W. Garner points the Court to a number of trial court decisions to support its contention that imagery or language reminiscent of a particular location does not meet the reasonable consumer standard. *See* Mot. at 8–12 (discussing *Steinberg v. Icelandic Provisions, Inc.*, 2022 WL 220641 (N.D. Cal. Jan. 25, 2022) and *Maeda v. Kennedy Endeavors, Inc.*, 407 F. Supp. 3d 953 (D. Haw. 2019)).

In particular, T.W. Garner argues that the packaging does not imply that the Product was manufactured in Texas, and that a reasonable consumer would understand that the trademark symbol next to the "Texas Pete" name indicates "that the Texas Pete brand name is just that – a brand name." Mot. at 7. T.W. Garner further states that the disclosure on the back label defeats White's claims as it clearly indicates that the Product was made in North Carolina and at no point states that the Products originate in Texas. Mot. at 7–8; Reply at 6–7.

When considering the label as a whole, the Court finds that a reasonable consumer, relying on the Products' labels could believe—erroneously—that the Products originated in Texas. Looking first to the use of the word "Texas," it is plausible that a reasonable consumer would assume that the use of the term refers to the state. Indeed, looking at the combination of "Texas" and "Pete," the

---

[3] White also refers to the cartoon image of the cowboy etched on the glass bottle but does not allege that he relied on this in his purchase, so the Court does not consider it. White also refers to the fact that the Original Product is branded "original," but since that is not common to all of the Products, the Court does not consider that fact here.

phrase, at the very least, indicates that "Texas" modifies "Pete," with the ultimate result that Pete is from or derives from Texas, and that the hot sauce itself is or derives from Texas. The presence of the trademark symbol does not discount this possibility, and T.W. Garner does not point to any case law suggesting as much. *See* Mot. at 7. And while T.W. Garner argues that "Texas" could refer to other geographical locations, such as "the coastal town of Texas, North Carolina," Mot. at 8, this argument is unavailing.[4] Texas is one of the largest states in the United States and, Texas, North Carolina, appears to be relatively unknown, meaning that it is far more likely that a reasonable consumer will have the *state* of Texas top of mind when viewing the Products' labels, not the "coastal town."[5] As such, it does not appear that "Texas Pete" is a brand name that "common sense would not lead anyone to be misled . . . ." *Moore*, 966 F.3d at 1018.

Though it is true that the imagery of the solo white star and lassoing caricature are not exclusive to the state of Texas, *see* Mot. at 9–10,  taking the imagery and text of the label as a whole, this argument does not discount the possibility that a reasonable consumer would believe that the Products are based in or originate from Texas.[6]

Contrary to T.W. Garner's assertion that "the Product's back label explicitly discloses its North Carolina origin," the back label contains no such "explicit statement of origin," as T.W.

---

[4] The Court notes that T.W. Garner did not provide any information upon which the Court could take judicial notice of the existence, size, or prominence of this "coastal town."

[5] It should be noted that are two predominate meanings of "Texas". Only one is a geographic location. *See* Texas, Merriam-Webster, https://www.merriam-webster.com/dictionary/texas (One, "a structure on the awning deck of a steamer that contains the officers' cabins and has the pilothouse in front or on top" and, two: a "state in the southern U.S. bordering on Mexico and the Gulf of Mexico; capital Austin area 266,807 square miles (691,030 square kilometers), population 25,145,561.").

[6] Both parties cite to a number of district court decisions that they believe support their relative positions. The Court has considered these decisions, but ultimately determines that on the facts of this case, White has plausibly alleged that a reasonable consumer could be misled. *See* Mot. at 8 (citing *Steinberg v. Icelandic Provisions, Inc.* No. 21-cv-05568-EMC, 2022 WL 220641, at *4–6 (N.D. Cal. Jan. 25, 2022); *Maeda v. Kennedy Endeavors, Inc.,* 407 F. Supp. 3d 953 (2019); *Govea v. Gruma Corp.*, No. 2:20-cv-08585-MWF, 2021 WL 1557748, at *5 (C.D. Cal. Mar. 1, 2021); Opp'n at 14–15 (citing *de Dios Rodriguez v. Olé Mexican Foods Inc.*, No. 5:20-cv-02324 JGB, 2021 WL 1731604 (C.D. Cal. Apr. 22, 2021); *Shalikar v. Asahi Beer U.S.A. Inc.*, No. 2:17-cv-02713 JAK, 2017 WL 9362139 (C.D. Cal. Oct. 16, 2017); and *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453 (S.D.N.Y. 2020)).

Garner claims, Mot. at 13. The back label states in four consecutive lines, all with decreasing font size:

> T.W. GARDNER FOOD CO.
> WINSTON-SALEM, NC 27105
> PRODUCT OF THE U.S.A.
> May be partially produced with genetic engineering.

Compl. ¶ 59. A reasonable consumer would most likely read the reference to "Winston-Salem, NC 27105" as a designation of T.W. Garner's corporate address, particularly since it expressly does not say "manufactured in Winston-Salem, NC," "Product of Winston-Salem, NC," or even "Origin: Winston-Salem, NC." Therefore, while a back label "'*can* ameliorate any tendency of the label to mislead,'" this one does not, given that at best it "'conflict[s] with, rather than confirm[s], [the] front label.'" *See Moore*, 966 F.3d at 1017 (quoting *Brady*, 237 Cal. Rptr. 3d at 692 (emphasis added)).

This Court finds that, just as in *Williams*, "[t]he facts of this case . . . do not amount to the rare situation in which granting a motion to dismiss is appropriate." 552 F.3d at 939. Viewing the allegations in the light most favorable to White—as it must on a Rule 12(b)(6) Motion to Dismiss—this Court finds the Complaint's allegations sufficient. As dismissal is only warranted when the Court is faced with the high bar of "impossibility,", dismissal is not warranted here. *Id.*

    ii.  <u>White's statutory consumer protection allegations are not subject to dismissal under Rule 9(b)'s heightened pleading standard</u>

T.W. Garner also seeks dismissal of White's UCL, CLRA, and FAL for failure to meet Rule 9(b)'s heightened pleading standard. Mot. at 15–16. Specifically, T.W. Garner argues that the Complaint fails to allege: (1) what language and images White relied on in purchasing the Products; and (2) how and why White understood the Product to be a Texas product. *Id.*. T.W. Garner also argues that the Complaint contains "conclusory statements" regarding the nature and popularity of Texas hot sauce, general consumer hot sauce purchasing behavior, and "what a reasonable [hot sauce] consumer would think." Mot. at 16..

Neither party disputes that White's California statutory claims sound in fraud. As such, the Court thus focuses on the sufficiency of the Complaint's allegations.

First, the Court finds that the Complaint adequately alleges the who, what, when, where, and how of the alleged misrepresentations. Contrary to T.W. Garner's assertions, White properly

specifies "who"—Defendant T.W. Garner, manufacturer of Texas Pete-brand hot sauce; "what"—the brand name and images implying that the Products are manufactured in Texas; "when"—September 2021; "where"—Los Angeles, California, and everywhere the products are found; and "how"—via the Products' label. Compl. ¶¶ 20–21, 39–41.

Second, the Court finds that White adequately alleges his reliance on the brand name and images. Governing law dictates that White need merely allege that he would not have bought the Original Product but for the misrepresentation. *See Moore*, 966 F.3d 1007, 1020–21 (9th Cir. 2020) (relying on *Kwikset Corp. v. Superior Ct.*, 246 P.3d 877, 887–89 (Cal. 2011)). White has done this. Compl. ¶ 20 ("Had White known the [Original] Product was not made in Texas, he would not have purchased the Product, or would have paid significantly less for it."). The following allegations further demonstrate reliance:

- "White relied upon the language and images displayed on the front label of the Product, and at the time of purchase understood the Product to be a Texas product." Compl. ¶ 20
- Defendant's 'Texas Pete' brand name . . . ." *Id.* at ¶ 39
- "Right above the 'Texas Pete' brand name/logo, Defendant prominently places a stereotypically white Texas 'lone star' reminiscent of the Texas state [*sic*] flag." *Id.* at ¶ 40.
- "Defendant also prominently displays a notorious Texan cowboy throwing a lasso on the front label of the Products." *Id.* at ¶ 41.
- "The cowboy and lone star symbols are famously and inexorably linked to the state [*sic*] of Texas, especially when, viewed in context, they are featured alongside a brand name as geographically specific as 'Texas Pete.'" *Id.* at ¶ 42.

This Court must accept all non-conclusory allegations in the Complaint as true. *See Manzarek*, 519 F.3d at 1031 ("We accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party."). Although T.W. Garner argues that the Complaint fails under Rule 9(b) for the additional reason that it contains "conclusory statements" regarding the nature and popularity of Texas hot sauce, general consumer hot sauce purchasing behavior, and "what a reasonable [hot sauce] consumer would think," Mot. at 16, these statements

do not constitute the who, what, where, when, and how of the allegations sounding in fraud.[7] As discussed above, White has met those requirements.

Accordingly, the Court finds that White's UCL, CLRA, and FLA claims are not subject to dismissal under Rule 9(b).

***

In sum, White's UCL, CLRA, and FLA claims are adequately pleaded. As such, the Court DENIES T.W. Garner's Motion to Dismiss as to White's California consumer protection claims.

**B. White's breach of express warranty claim is properly pleaded**

T.W. Garner seeks dismissal of White's cause of action for breach of express warranty, asserting that White has failed to plead "exactly what the [seller's] affirmation of fact or promise was and how [White] relied on such statements." Mot. at 17.

Under section 2313 of the California Commercial Code, express warranties are created when a seller provides, as part of the basis of the bargain, that its goods will conform to any "affirmation of fact or promise" or "description of the goods" made by the seller. *See* Cal. Com. Code § 2313(1)(a)–(b). To prevail on a breach of express warranty claim, a plaintiff must show that: (1) the seller's statements constituted an "affirmation of fact or promise" or a "description of the goods;" (2) these statements were part of the basis of the bargain; and (3) the warranty was breached. *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Cal. Ct .App. 2010) (citing *Keith v. Buchanan*, 220 Cal. Rptr. 392, 395 (Cal. Ct. App.1985)).

Section 2313 creates a presumption that the seller's statements go to the basis of the bargain, meaning that there is no reliance requirement. *Id.*; *see also Buchanan*, 220 Cal. Rptr. at 397–98 ("the concept of reliance has been purposefully abandoned."). Official comment 3 to section 2313 states that "no particular reliance on such statements needs to be shown" and that instead, "any fact which is to take such affirmations" requires "affirmative proof." Cal. Com. Code § 2313. Since reliance is

---

[7] The Court also notes that T.W. Garner does not specify what is conclusory about these statements. To the extent that T.W. Garner would have this Court dismiss these allegations on the ground that White has not provided evidentiary support for these allegations, this Court is not empowered to dismiss these allegations on that basis at this stage. Such an analysis is reserved for a Motion for Summary Judgment or trial.

1    not required, the Court will not consider whether White relied on any statements made by T.W.

2    Garner.[8]

3           T.W. Garner argues that White has not properly pleaded his breach of express warranty claim

4    because he has not identified a specific affirmation of fact or promise by the company. Mot. at 17.

5    According to T.W. Garner, even if White inferred that the Products were made in Texas, T.W.

6    Garner argues that the text and images on the Products' labeling do not constitute affirmations of

7    fact or promise that the Products were manufactured in Texas. Mot. at 18.

8           The Court finds that White has plausibly alleged that the Products' labeling—that is, the

9    brand name, the lone star, and the cowboy—constituted an "affirmation of fact or promise" that

10   T.W. Garner either manufactured the Products in Texas or used ingredients sourced from there.[9] It

11   would be premature at this stage to decide whether a reasonable consumer *would* view the Products'

12   labeling as a fact or promise of the Products' origin.[10] Accordingly, the Court finds that the

13   Complaint plausibly alleges a breach of express warranty.

14   —————————————————————

15   [8] T.W. Garner argues that "[i]n order to plead a cause of action for breach of warranty, one must

16   allege the exact terms of the warranty, plaintiff's reasonable reliance thereon, and a breach of that warranty
     which proximately causes plaintiff injury." Mot. at 17 (citing *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d

17   1074, 1105 (N.D. Cal. 2017). However, the quotation at issue relies on the 1954 California Supreme Court
     case *Burr v. Sherwin Williams Co.*, which predates California's adoption of the Uniform Commercial Code

18   (UCC) in 1963. 268 P.2d 1041, 1049 (1954). While pre-UCC law on express warranties required a purchaser
     to prove that specific promises made by the seller were relied on, the California Commercial Code does not

19   require such reliance. *See Weinstat*, 103 Cal. Rptr. 3d at 626.

20   [9] T.W. Garner argues that its labeling is similar to *Broomfield v. Craft Brew All., Inc.*, in which a Hawaiian

21   address, map and brewery invitation on beer packaging did not create an express warranty of the product
     being manufactured in Hawaii. Mot. at 18; No. 5:17-cv-01027-BLF, 2017 WL 3838453, at *10 (N.D. Cal.

22   Sept. 1, 2017). This case is particularly unhelpful for T.W. Garner. In that case, the manufacturer indeed
     owned a brewery in Hawaii that *previously* brewed the Kona beer at issue and *still* brewed some of it—just

23   not the beer the plaintiff purchased. *Id.* at *1–*2. The Court therefore found that the address, map, and
     brewery invitation were truthful and "cannot be considered unequivocal statements or guarantees that Kona

24   beer is *exclusively* brewed in Hawaii." *Id.* at *10 (emphasis added). There is nothing truthful about any
     implication that the Products are made in Texas.

25   [10] T.W. Garner cites to *Hadley v. Kellogg Sales Co.* as an example of when a breach of warranty claim was

26   dismissed for failing to allege the exact terms of the warranty. Mot. at 18. This case is inapposite. In *Hadley*,
     the plaintiff alleged sixty-five different statements by the seller for fifty-three products undifferentiated by

27   product variant. 243 F. Supp. 3d at 1105. The court found that—given that judges are not like pigs, hunting
     for truffles in complaints—the plaintiff must differentiate what express warranty claim he was making as to

28   each product. Because the plaintiff failed to do so, his breach of warranty claim was required to be dismissed.

The Court hereby DENIES T.W. Garner's Motion to Dismiss as to White's breach of express warranty claim.

### C. White's breach of implied warranty of merchantability claim is properly pleaded

T.W. Garner seeks dismissal of White's breach of implied warranty of merchantability claim on the grounds that the claim "rises and falls with express warranty claims brought for the same product" and that White lacks privity with the company. Mot. at 19 (citing *Hadley*, 243 F. Supp. 3d at 1096).

Under section 2314 of the California Commercial Code, an implied warranty of merchantability in a sale of goods requires that the goods are merchantable, including that they "[c]onform to the promises or affirmations of fact made on the container or label."[11] Cal. Com. Code § 2314(2)(f). Unlike express warranties, the implied warranty of merchantability does not generally require that goods precisely fulfill the expectation of the buyer. *Mega RV Corp. v. HWH Corp.*, 170 Cal. Rptr. 3d 861, 871 (Cal. Ct. App. 2014) (citing *American Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Cal. Ct. App. 1995)). "Instead, it provides for a minimum level of quality." *Id.* (internal quotation marks omitted).

Additionally, a plaintiff asserting an implied breach of warranty claim must stand in vertical contractual privity with the defendant. *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008). For a buyer and seller, they stand in privity if they are in adjoining links of the distribution chain. *Id.* However, there are particularized exceptions to the privity requirement, including when a plaintiff relies on the written labels or advertisements of a manufacturer. *Id.*; *see also Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048–49 (Cal. 1954) ("[Another] possible exception to the general rule is found in a few cases where the purchaser relied on representations

---

In the case at bar, White points to three labeling elements—the brand name, the star, and the cowboy—and asserts that they comprise one set of claims—that the Products originate in Texas—that apply to all three Products.

[11] The other requirements for goods to be merchantable, which have not been disputed by the parties, are that they (a) "[p]ass without objection in the trade under the contract description;" (b) for fungible goods, be "of fair average quality within the description;" (c) be "fit for the ordinary purposes for which such goods are used;" (d) be the same "kind, quality, and quantity within each unit and among all units;" and (e) be "adequately contained, packaged, and labeled." Cal. Com. Code § 2314.

1   made by the manufacturer in labels or advertising material, and recovery from the manufacturer was

2   allowed on the theory of express warranty without a showing of privity.").

3          T.W. Garner argues that since White's express warranty claim would fail, his implied

4   warranty claim would too because it is "based solely on whether the product in dispute conforms to

5   the promises or affirmations of fact on the packaging of the product." Mot. at 19 (citing *Hadley*, 243

6   F. Supp. 3d at 1106)[12]. In response, White argues that the "inverse" of this is also true, in that an

7   implied warranty claim can survive a motion to dismiss for the same reasons as an express warranty

8   claim. Opp'n at 22 (citing *Roper v. Big Heart Pet Brands, Inc.*, 510 F. Supp. 3d 903, 924 (E.D. Cal.

9   2020) ("[Because] the plaintiff has alleged a valid express warranty claim . . . plaintiff has asserted a

10  cognizable claim for breach of an implied warranty.")).

11         T.W. Garner argues that White lacks privity with the company because he purchased the

12  product from a third-party retailer. Mot. at 20. Further, T.W Garner argues that no privity exception

13  applies because the company has not made any representations on its product labels that its products

14  were made in Texas. *Id.* White argues in response that the representations made by T.W. Garner in

15  its labeling fall under the privity exception, meaning that privity is not a proper basis to dismiss his

16  implied warranty claim. Opp'n at 22.

17         The Court finds that White has properly alleged this claim. As discussed above, White has

18  plausibly alleged that the labeling constituted a promise or affirmation of fact as to the Products'

19  origin. He has also plausibly alleged that he relied on the manufacturer T.W. Garner's labeling as an

20  express warranty. It would be premature at this stage to determine whether T.W. Garner's labeling in

21  fact conformed to the section 2314(2)(f) merchantability requirement. Accordingly, taking all well-

22  pleaded material facts as true, the Court finds that the privity exception would apply and the

23  Complaint plausibly alleges a breach of implied warranty.

24         The Court hereby DENIES T.W. Garner's Motion to Dismiss as to White's breach of implied

25  warranty of merchantability claim.

26         / / /

27  
28  [12] T.W. Garner's Motion miscites to *Hadley*, 243 F. Supp. 3d at 1096.

**D.  White's unjust enrichment claim is properly pleaded**

T.W. Garner seeks to dismiss White's unjust enrichment claim because there is an adequate remedy at law otherwise available. Mot. at 20–21. In general, California courts have held that there is no standalone unjust enrichment claim in California. *See, e.g.*, *Melchoir v. New Line Prods., Inc.*, 131 Cal. Rptr. 2d 347, 357 (Cal. Ct. App. 2003) ("there is no cause of action in California for unjust enrichment."); *see also Dinosaur Dev., Inc. v. White*, 265 Cal. Rptr. 525, 527 (Cal. Ct. App. 1989) ("unjust enrichment . . . is synonymous with restitution."); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 699 (Cal. Ct. App. 2010) (same); *Levine v. Blue Shield of Cal.*, 117 Cal. Rptr. 3d 262, 278–79 (Cal. Ct. App. 2010) (same). But as the Ninth Circuit explained in *Astiana v. Hain Celestial Grp., Inc.*, "[w]hen a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" 783 F.3d 753, 762 (9th Cir. 2015) (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 166 Cal. Rptr. 3d 864, 872 (Cal. Ct. App. 2014)). Such a claim requires the plaintiff to show (1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense. *Peterson v. Cellco P'ship*, 80 Cal. Rptr. 3d 316, 323 (Cal. Ct. App. 2008).

The Court finds that White has properly alleged this claim. He alleges that T.W. Garner received a benefit from the "deceptive representations" of Texas imagery leading to the purchase of its North Carolina-based products, and that T.W. Foods was unjustly enriched for the value of the purchase price. Compl. ¶¶ 155, 157.

T.W. Garner seeks to dismiss this claim for the additional reason that it is duplicative of White's UCL, FAL, and CLRA claims. Mot. at 21. This is not a basis upon which to dismiss the claim. A straightforward application of Rule 8 permits duplicative claims. *See Astiana*, 783 F.3d at 762–63; Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.").

The Court hereby DENIES T.W. Garner's Motion to Dismiss as to White's unjust enrichment claim.

/ / /

/ / /

**E. White has standing to pursue injunctive relief**

Finally, White seeks both a private and public injunction against T.W. Garner "requiring affirmative disclosures to dispel the public's misperception [regarding the origin of the Products], and prevent the ongoing deception and repeat purchases based thereon." Compl. ¶ 71(c)–71(d) T.W. Garner argues that White lacks standing to pursue either injunction. Mot. at 2123; Reply at 7–9.

      i.  White has standing to pursue a private injunction

T.W. Garner argues that White lacks standing to pursue any injunctive relief because he "has full knowledge and understanding as to the place of origin for the Product . . . ." Mot. at 21–22. In response, White contends that T.W. Garner relies on an outdated knowledge-based standard because the Ninth Circuit's more recent holding in *Davidson v. Kimberly-Clark Corp*., 889 F.3d 956 (9th Cir. 2018), does not unequivocally preclude a previously deceived customer from having standing to pursue an injunction on a false advertising or labeling claim. Opp'n at 17–20.

"Past exposure to harmful or illegal conduct does not necessarily confer standing to seek injunctive relief if the plaintiff does not continue to suffer adverse effects." *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Article III requires plaintiffs show a "real or immediate threat . . . that [they] will again be wronged in a similar way" to obtain injunctive relief. *Id.* (quoting *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (internal quotation marks omitted)). "[T]he threat of injury must be actual and imminent, not conjectural or hypothetical." *Davidson*, 889 F.3d at 967  (quotation marks and citations omitted). In *Davidson*, the Ninth Circuit detailed two ways that a previously deceived consumer may still have standing: (1) "the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to;" or (2) "the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved." *Id.* at 969–70.

The plaintiff in *Davidson* had purchased sanitary wipes that the defendant manufacturer had represented as "flushable," only to learn *after* using the product that the wipes were not suitable for flushing. *Id.* at 961–62. Plaintiff had expressed "that she would purchase truly flushable wipes

manufactured by [the defendant] if it were possible." *Id.* at 971. The Ninth Circuit held that the plaintiff had standing to seek injunctive relief because there was "no way of determining" whether defendant's subsequent representations regarding whether the wipes are flushable was in fact true without purchasing the product again. *See id.* at 972. As a result, the plaintiff "face[d] the similar injury of being unable to rely on [defendant's] representations of its product in deciding whether or not she should purchase the product in the future." *Id.* at 971–72.

The Court is presented with similar facts. As discussed above, the back label does not expressly state that the Products originate in North Carolina and not in Texas. Therefore, without a corresponding change in the label, the risk of deception remains. Based upon the allegations in the Complaint—which, as discussed, plausibly alleges that the front label conveys that the Products are made in Texas and the back label does not conflict with that—the Court finds that any examination of the packaging would not reveal the origin of the Product. [13] The key question under *Davidson* is the extent to which the plaintiff could determine whether subsequent representations were true.[14] As such, the Court finds that White does have standing to pursue a private injunction.

ii.   White has standing to pursue a public injunction

White also seeks a public injunction under the UCL "on behalf of those who may have no prior knowledge of the deception." Opp'n at 19–20; *see* Compl. ¶ 71(d). T.W. Garner, in response,

---

[13] This distinguishes this case from those cited by T.W. Garner, where an examination of the labeling *would* reveal the relevant truth regarding the product *See, e.g.*, *Cimoli v. Alacer Corp.*, 546 F. Supp. 3d 897, 906–07 (N.D. Cal. 2021) (collecting cases); *see also Sinatro v. Mrs. Gooch's Nat. Food Markets, Inc.*, No. 3:22-CV-03603-TLT, 2023 WL 2324291, at *9 (N.D. Cal. Feb. 16, 2023) (applying *Davidson*, and finding no standing to pursue injunctive relief where plaintiffs, being previous purchasers, "ha[d] multiple indicia of information to determine the amount of product in each box prior to purchasing the product, such as the net weight, serving size, approximate yield, and package size."); *Cordes v. Boulder Brands USA, Inc.*, No. 2:18- CV – 06534-PSG-JC, 2018 WL 6714323, at *4 (C.D. Cal. Oct. 17, 2018) (applying *Davidson*, and finding that plaintiff was now "on notice about potential underfilling [and could] easily determine the number of pretzels in each package before making a future purchase by simply reading the back panel[.]").

[14] For this reason, the Court does not find the reliance on *Sinatro v. Barilla* to be persuasive. *Sinatro v. Barilla Am., Inc.*, No. 4:22-CV-03460-DMR, 2022 WL 10128276, at *10 (N.D. Cal. Oct. 17, 2022) (No standing where it was implausible that defendant would start producing pasta products in Italy). The Court finds that it is plausible that if White encounters the Products in the future, he will not know if they continue to be produced in North Carolina. It is similarly plausible that T.W. Garner may produce the Products in Texas in the future.

1 | argues that the relief must be denied because White is not individually entitled to seek private

2 | injunctive relief. Reply at 8–9 (citing *Hodgers-Durgin v. de la Vina,* 199 F.3d 1037, 1045 (9th Cir.

3 | 1999)).

4 |       "[P]ublic injunctive relief" is "relief that has the primary purpose and effect of prohibiting

5 | unlawful acts that threaten future injury to the general public . . . and that benefits the plaintiff, if it

6 | all, only incential[ly] and/or incidental[ly] as a member of the general public." *McGill v. Citibank,*

7 | *N.A.*, 393 P.3d 85, 89, 90 (Cal. 2017) (internal quotation marks and citation omitted) (bracketed text

8 | in original) . Public injunctive relief exists in contrast to private injunctive relief which is "relief that

9 | primarily resolve[s] a private dispute between the parties [Citation] and rectif[ies] individual wrongs

10 | [Citation], and that benefits the public, if at all, only incidental[ly]." *Id.* at 89 (internal quotation

11 | marks and citation omitted) (bracketed text in original).

12 |       Courts routinely base the adequacy of requests for injunctive relief on whether the plaintiff

13 | lacks standing to pursue an injunction claim.[15] Courts also regularly deny said requests where "the

14 | class affected by the alleged practices is small, and where there is no real prospective benefit to the

15 | public at large from the relief sought," *Kilgore v. KeyBank, Nat. Ass'n*, 718 F.3d 1052, 1061 (9th

16 | Cir. 2013), or where the "[r]elief . . . has the primary purpose or effect of redressing or preventing

17 | injury to an individual plaintiff—or to a group of individuals similarly situated to the plaintiff . . . ."

18 | *McGill*, 393 P.3d at 90. Further, "[u]nless the named plaintiffs are themselves entitled to seek

19 | injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of

20 | [a] proposed class may have suffered is simply irrelevant to the question whether the named

21 | plaintiffs are entitled to the injunctive relief they seek." *Hodgers-Durgin*, 199 F.3d at 1045.

22 |       The Complaint states the following in support of a public injunction:

23 | 71(c) **Injunctive Relief to Cease Misconduct and Dispel Misperception.** Injunctive relief is appropriate on behalf of Plaintiff and members of the Class

24 |

---

25 | [15] *See, e.g.*, *Sousa v. Walmart, Inc.*, No. 1:20-CV-00500-EPG, 2023 WL 1785960, at *7 (E.D. Cal. Feb. 6,
26 | 2023) (collecting cases); *Vasquez v. Cebridge Telecom CA, LLC*, 569 F. Supp. 3d 1016, 1024 (N.D. Cal.
2021) (granting a request for public injunctive relief where the plaintiff had adequately alleged injury-in-fact);
27 | *Herrera v. Wells Fargo Bank, N.A.*, No. 8:18-cv-00332-JVS-MRW, 2020 WL 5804255, at *5–*6 (C.D. Cal.
Sept. 8, 2020) (denying a request for a public injunction where the plaintiff was found to lack Article III
28 | standing).

because Defendant continues to misrepresent the Products as alleged herein. Injunctive relief is necessary to prevent Defendant from continuing to engage in the unfair, fraudulent, and/or unlawful conduct described herein and to prevent future harm . . . . Further, injunctive relief, in the form of affirmative disclosures is necessary to *dispel the public misperception about the Products* that has resulted from years of Defendant's unfair, fraudulent, and unlawful marketing efforts. Such disclosures would include, but are not limited to, publicly disseminated statements that the Products labeling and advertising is not true and providing accurate information about the Products' true nature; and/or requiring prominent qualifications and/or disclaimers on the Product's front label concerning the Products' true nature. *An injunction requiring affirmative disclosures to dispel the public's misperception, and prevent the ongoing deception and repeat purchases based thereon* is not available through a legal remedy. . . .

71(d) **Public Injunction.** Further, because a "public injunction is available under the UCL, damages will not adequately "benefit the general public" in a manner equivalent to an injunction.

Compl. ¶¶ 71(c)–71(d) (emphasis added).

Here, as already established, the Court finds that White does have Article III standing to seek a private injunction at this stage. As this was the only basis upon which T.W. Garner agues a public injunction should be denied, the Court declines to dismiss the request for injunctive relief at this stage.

Accordingly, the Court hereby DENIES T.W. Garner's Motion to Dismiss as to White's requests for injunctive relief.

## **CONCLUSION**

For the reasons stated above, the Court DENIES T.W. Garner's Motion to Dismiss in full.

IT IS SO ORDERED.

Dated: July 31, 2023

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

20